

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00105-CV
_____

IN THE INTEREST OF S.A.G., A CHILD

On Appeal from the County Court at Law
Hopkins County, Texas
Trial Court No. CV40896

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

Glenna Sue Terry brought a suit affecting the parent-child relationship of her grandson, S.A.G., wherein she sought to be appointed joint managing conservator of the child. Terry's daughter (the mother of S.A.G.), Lesli Glover, was named as a respondent. During the pendency of the case, the trial court appointed an amicus attorney, and, after a hearing on the merits, the trial court denied Terry's petition. On appeal, Terry argues that (1) an ex parte meeting of the trial court and the amicus attorney violated the Confrontation Clause, (2) Texas Family Code "statutes §§ 107.003, 107.005, 107.006 and 107.021," which deal with the appointment of amicus attorneys, are facially unconstitutional and unconstitutional as applied to this case, and (3) the trial court erred by allowing the amicus attorney to violate parts of Section 107.007 of the Texas Family Code by having an ex parte interview with the trial court after the conclusion of the hearing. Although we find that the trial court erred in permitting ex parte communications with the amicus attorney, we find the error harmless in this case and affirm the trial court's judgment.

## I.  Factual Background

In 2003, as part of a general overhaul to Chapter 107 of the Texas Family Code, the Texas Legislature created the new court-appointed position of amicus attorney. *See* Act of June 18, 2003, 78th Leg., R.S., ch. 262, 2003 Tex. Gen. Laws 1173, 1173–83 (amended 2005) (current version at TEX. FAM. CODE ANN. §§ 107.001–.010 (West 2008)). An amicus attorney "means an attorney appointed by the trial court in a suit . . . whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide

legal services to the child." TEX. FAM. CODE ANN. § 107.001(1).  The powers and duties of an

amicus attorney are specified by Texas Family Code Sections 107.003 and 107.005.[1]  This new

---

[1] Section 107.003 reads:

An attorney ad litem appointed to represent a child or an amicus attorney appointed to assist the court:

(1)     shall:

(A)     subject to Rules 4.02, 4.03, and 4.04, Texas Disciplinary Rules of Professional Conduct, and within a reasonable time after the appointment, interview:

(i)     the child in a developmentally appropriate manner, if the child is four years of age or older;

(ii)     each person who has significant knowledge of the child's history and condition, including any foster parent of the child; and

(iii)     the parties to the suit;

(B)     seek to elicit in a developmentally appropriate manner the child's expressed objectives of representation;

(C)     consider the impact on the child in formulating the attorney's presentation of the child's expressed objectives of representation to the court;

(D)     investigate the facts of the case to the extent the attorney considers appropriate;

(E)     obtain and review copies of relevant records relating to the child as provided by Section 107.006;

(F)     participate in the conduct of the litigation to the same extent as an attorney for a party;

(G)     take any action consistent with the child's interests that the attorney considers necessary to expedite the proceedings;

(H)     encourage settlement and the use of alternative forms of dispute resolution; and

(I)     review and sign, or decline to sign, a proposed or agreed order affecting the child;

(2)     must be trained in child advocacy or have experience determined by the court to be equivalent to that training; and

(3)     is entitled to:

(A)     request clarification from the court if the role of the attorney is ambiguous;

(B)     request a hearing or trial on the merits;

(C)     consent or refuse to consent to an interview of the child by another attorney;

(D)     receive a copy of each pleading or other paper filed with the court;

(E)     receive notice of each hearing in the suit;

(F)     participate in any case staffing concerning the child conducted by an authorized agency; and

(G)     attend all legal proceedings in the suit.

3

position is something of a legal will-o'-the-wisp whose client is not defined in the statute (and, thus, whose representative capacity is cloudy), a concept that appears to be antithetical to the adversary system of justice under which courts in this Nation have always operated. Under the authority granted to the court by Texas Family Code Section 107.021, the trial court appointed James Wendell Litzler as amicus attorney in this case. *See* TEX. FAM. CODE ANN. § 107.021(a) (West 2008). In accord with these statutes, Litzler reviewed the pleadings, met with S.A.G. and his counselor, spoke with the parties and their attorneys, and attended the trial of the case on August 15, 2012.

---

TEX. FAM. CODE ANN. § 107.003. Although Terry did not object to Litzler's appointment as amicus attorney, the factual recitation in the brief suggests that Litzler was not qualified pursuant to Section 107.003(2). TEX. FAM. CODE ANN. § 107.003(2). Although this issue was not raised as a separate point of error, we note the record's demonstration affirming that no objection to Litzler's qualifications was made in a timely fashion. TEX. R. APP. P. 33.1. Further, Litzler testified that he took a course that "was a child advocacy course."

Section 107.005 further states:

(a) Subject to any specific limitation in the order of appointment, an amicus attorney shall advocate the best interests of the child after reviewing the facts and circumstances of the case. Notwithstanding Subsection (b), in determining the best interests of the child, an amicus attorney is not bound by the child's expressed objectives of representation.
(b) An amicus attorney shall, in a developmentally appropriate manner:
(1) with the consent of the child, ensure that the child's expressed objectives of representation are made known to the court;
(2) explain the role of the amicus attorney to the child;
(3) inform the child that the amicus attorney may use information that the child provides in providing assistance to the court; and
(4) become familiar with the American Bar Association's standards of practice for attorneys who represent children in custody cases.
(c) An amicus attorney may not disclose confidential communications between the amicus attorney and the child unless the amicus attorney determines that disclosure is necessary to assist the court regarding the best interests of the child.

TEX. FAM. CODE ANN. § 107.005. Perhaps one of the more challenging tasks assigned by statute to the amicus attorney is for that person to "in a developmentally appropriate manner . . . explain the role of the amicus attorney to the child." TEX. FAM. CODE ANN. § 107.005(b)(2).

4

Litzler submitted an invoice to the trial court which included a reference to a forty-five-minute "Meeting with Judge [Amy] Smith" August 16, 2012 (the day after the contested hearing). An August 27, 2012, letter from the trial judge informed counsel that "Litzler has given me his recommendation as Amicus Attorney in this matter. He believes the child should remain with the mother." The letter further stated that "Litzler's recommendation and the testimony of the witnesses" led the trial judge to "den[y] the request to change custody" and concluded with a request that Glover's attorney create a proposed order for the court's signature.

After the date of the trial court's letter, but before the proposed order was actually signed, a motion for rehearing was filed that vigorously complained of the ex parte meeting between the amicus attorney and the trial court. This motion stated, in part,

> 1. On August 15, 2012, this Court heard this case and is considering whether to sign a proposed judgment . . . in this case.
>
> 2. A rehearing should be granted to Movant because this Court considered evidence that was improper and prejudicial to the rights of Movant. Specifically, the Amicus Attorney met privately with the judge and fact finder of this Court in this case and argued his recommendation outside the presence of all attorneys and parties in this case.
>
> 3. This out-of-court private meeting to consider the amicus' opinion and advice in this case violates Section 107.007(a)(4)[2] of the Texas Family Code

---

[2]Section 107.007 reads:

> (a) An attorney ad litem, an attorney serving in the dual role, or an amicus attorney may not:
> (1) be compelled to produce attorney work product developed during the appointment as an attorney;
> (2) be required to disclose the source of any information;
> (3) submit a report into evidence; or
> (4) testify in court except as authorized by Rule 3.08, Texas Disciplinary Rules of Professional Conduct.

which specifically forbids an amicus attorney from testifying in any case. Also the private meeting and consultation is in violation of Section 107.003(1)(A) of the Texas Family Code which says that an amicus can participate in the conduct of litigation to the same extent as an attorney for a party. No attorney for any party may have a private, ex parte session with the judge to argue or present their side of the case, and therefore, this is a violation of this section.

. . . .

5. Further, as alluded to already, the opinion allowed to be given by the amicus attorney in private was not subject to cross-examination, and this is a violation of the United States and Texas constitutional right of confrontation.

The motion also alleged that the "amicus attorney statute provisions . . . are unconstitutional on the grounds that they violate [] due process rights," "the right of confrontation," "the attorney client privilege and right of privacy between the child and the attorney," and "the right of privacy and the right of attorney client privilege of the parties in the suit."

The trial court entered its order in conformity with the letter ruling on October 3, 2012. This order denied Terry's petition to modify the parent-child relationship by naming her a joint managing conservator. Nevertheless, a hearing on Terry's motion for new trial was conducted November 1, 2012, wherein Litzler (the only witness at the hearing) confirmed that he had met with the trial judge privately on the day after trial, discussed the testimony of the witnesses, and expressed his opinion on the case without the parties and their attorneys present. The trial court found that "Mr. Litzler did exactly what he was supposed to do under the statute" and denied the motion for new trial.

---

(b)    Subsection (a) does not apply to the duty of an attorney to report child abuse or neglect under Section 261.101.

TEX. FAM. CODE ANN. § 107.007.

6

## II. Confrontation Clause Does Not Apply to Civil Cases

Terry complains that the ex parte meeting with the trial judge violated "the Confrontation Clause of the United States and Texas Constitutions" and cites only the case of *Crawford v. Washington*, 541 U.S. 36, 51–52 (2004), to support this proposition.

However, the Sixth Amendment Confrontation Clause and Article I, Section 10 of the Texas Constitution apply only "[i]n all criminal prosecutions," and *Crawford* is a criminal case which does not apply to this civil proceeding. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see In re Commitment of Polk*, 187 S.W.3d 550, 555–56 (Tex. App.—Beaumont 2006, no pet.). In sum, "[t]here is no constitutional right to confrontation in a civil proceeding." *Alexander Shren-Yee Cheng v. Zhaoya Wang*, 315 S.W.3d 668, 671 (Tex. App.—Dallas 2010, no pet.); *see Ochs v. Martinez*, 789 S.W.2d 949, 951 (Tex. App.—San Antonio 1990, writ denied).

Accordingly, Terry's complaints relating to confrontation and suggestions that she was deprived of due process based on the inability to confront Litzler are overruled.

## III. Constitutionality of Amicus Provisions in Chapter 107 of the Texas Family Code

Terry's brief "seek[s] to challenge both the facial and as-applied unconstitutionality of [TEX. FAM. CODE ANN.] §§ 107.003, 107.005, 107.006, and 107.021."

Terry raises the following vagueness challenges to the complained-of statutes:

- Section 107.003(1)(D)'s requirement that an amicus attorney "investigate the facts of the case to the extent the attorney considers appropriate" and Section 107.003(F)'s requirement that an amicus attorney "participate in the conduct of the litigation to the same extent as an attorney for a party" forces "men of common intelligence" to "guess[] at the meaning of the statute";

- Section 107.003(2)'s requirement that an amicus attorney "must be trained in child advocacy or have experience determined by the court to be equivalent to that training" fails to specify the meaning of this phrase;

- Section 107.005(b)(4)'s requirement that an amicus attorney "become familiar with the American Bar Association's standards of practice for attorneys who represent children in custody cases" is impermissibly vague; and

- Section 107.006's mandate that "the court shall issue an order authorizing the . . . amicus attorney to have immediate access to the child and any information relating to the child" is vague due to the phrase "any information."

*See generally* TEX. FAM. CODE ANN. §§ 107.003, 107.005, 107.006 (West 2008 & Supp. 2012).

"As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . and (2) the trial court: (A) ruled on the request, objection, or motion. . . ." TEX. R. APP. P. 33.1(a). "It is well-settled that an objection at trial that does not comport with the complaint raised on appeal preserves nothing for appellate review." *Martin v. Paris*, No. 06-10-00037-CV, 2011 WL 766653, at *7 (Tex. App.—Texarkana Mar. 4, 2011, no. pet.) (mem. op.) (citing *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999)).

Although Terry voiced several objections on constitutional grounds below, the idea that these statutes were void for vagueness was not among those objections. Accordingly, Terry has failed to preserve that issue for our review. TEX. R. APP. P. 33.1(a); *see Wood v. City of Texas City*, No. 14-11-00979-CV, 2013 WL 440569, at *5 n.5 (Tex. App.—Houston [14th Dist.] Feb. 5, 2013, no pet.) (mem. op.) (refusing to address "vagueness complaint [raised] for the first time in [the] appellant's brief").

Next, Terry complains that the statutes "violate all rights to be free from unwarranted search and seizure guaranteed by the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution," which protect against unreasonable searches and seizures conducted by government officials. Again, because this issue was not raised at the trial level, it was not preserved for our review.

As a final point regarding the constitutionality of the statute, Terry raises issues with regard to waivers of attorney-client and work-product privileges that could occur in the course of the amicus attorney's representation of the court and the child's best interest. Specifically, she argues that Chapter 107's amicus provisions "violate the constitutional requirements and case law provisions of the attorney client privilege and right of privacy between the child and the attorney, and further violate the right of privacy and the right of attorney client privilege of the parties in the suit." Chapter 107 authorizes the amicus attorney to speak to the child and gather the facts of the case to help determine the best interest of the child. TEX. FAM. CODE ANN. §§ 107.003, 107.005. However, even though Terry has raised theoretical questions concerning the scope of the authority granted to the amicus attorney, she fails to recite any privileged information which was allegedly divulged to the amicus attorney. Even assuming that this occurred and that Terry's argument was feasible, any implicated privileges were subject to voluntary waiver during discussions with the amicus attorney. Terry's failure to complain about the procedure and her failure to assert any privilege until after trial also leads us to conclude that this argument was untimely made.

We overrule Terry's complaints regarding the constitutionality of "[TEX. FAM. CODE ANN.] §§ 107.003, 107.005, 107.006, and 107.021."

**IV.    While the Trial Court Erred in Permitting the Amicus Attorney's Ex Parte Communications, the Error Was Harmless in this Case**

Ex parte communications are "those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter." *In re Thoma*, 873 S.W.2d 477, 496 (Tex. Rev. Trib. 1994, no appeal). Terry argues that the trial court erred in engaging in ex parte communications with the amicus attorney.[3] We agree.

Our adversarial system of justice, grounded in the principle of an impartial judiciary, becomes compromised when one-sided, closed-door, in-chambers discussions with trial judges are encouraged. For this reason, all attorneys are subject to Texas Disciplinary Rule of Professional Conduct Rule 3.05 prohibiting ex parte communications, and judges "shall not initiate, permit, or consider *ex parte* communications or other communications made to the judge outside the presence of the parties between the judge and a party, an attorney, a guardian or attorney ad litem, an alternative dispute resolution neutral, or any other court appointee concerning the merits of a pending or impending judicial proceeding." TEX. CODE JUD. CONDUCT, Canon 3(B)(8), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West

---

[3]Terry argues that the meeting with the trial judge violated Section 107.007's prohibition stating that "an amicus attorney may not: . . . (3) submit a report into evidence; or (4) testify in court . . . ." TEX. FAM. CODE ANN. § 107.007(3)–(4). There is no written report that was submitted into evidence, and Liztler did not testify in court. Thus, he did not violate Section 107.007's prohibition.

Because an amicus attorney may "participate in the conduct of the litigation to the same extent as an attorney for a party," he may question witnesses and present argument in open court without violating Section 107.007. TEX. FAM. CODE ANN. § 107.003(1)(F).

10

2013); *see* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013).

We recognize the wording of Chapter 701[4] creates confusion in suggesting that the amicus attorney is not the attorney for the child, but instead assists the court. In cases not on point with this one, several of our sister courts have written that the amicus attorney "represents neither an appellant nor an appellee," and "the trial court, is, in effect, the amicus attorney's client for a limited purpose." *O'Connor v. O'Connor*, 245 S.W.3d 511, 515 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see In re Collins*, 242 S.W.3d 837, 842 (Tex. App.—Houston [14th Dist.] 2007, no pet.). If the amicus attorney was the attorney for the court, then perhaps ex parte communications would be permitted based on the attorney-client privileges provided by Texas Rule of Evidence 503 and Rule 1.05 of the Texas Disciplinary Rules of Professional Conduct. TEX. R. EVID. 503; TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.05, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A.

However, we do not believe that the Texas Legislature intended the trial court to be the amicus attorney's client or that the statutory language encourages ex parte communications. The

---

[4]We are critical of the Legislature's creation of the role of amicus attorney. In practice, this allegedly independent attorney is advocating on the behalf of a party by attempting to convince a receptive judge that custody of the child should be afforded to one party or another because that amicus attorney believes himself to be acting solely in the best interests of the child. Under our system of justice, this determination should belong only to the trier of fact—in this case, the trial judge. We believe the amicus attorney practice may encourage ex parte communications due to lack of clarity in the Rules, resulting in a high potential for abuse as this case illustrates in creating an additional allegedly "independent" position that has been wedged in the middle of our traditional adversarial system. We also observe that there is nothing in the authorization of the amicus attorney which would restrict the amicus attorney from considering evidence obtained outside the legal system—even evidence which would be barred under the sometimes-uncomfortable constraints of the Texas Rules of Evidence. Since under Texas Family Code Section 107.007(a)(2), the amicus attorney could not be compelled to divulge the source of any information upon which his recommendation was based, we believe this constraint might lend credence to a belief that the recommendations of the amicus attorney could be based on conclusions drawn from evidence which would never be allowed in a court of law.

11

role of an amicus attorney is "to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." TEX. FAM. CODE ANN. § 107.001(1). This simply means that the court has the authority to appoint a lawyer to advocate for the best interests of the child, without being bound by the child's objectives of representation or the wishes that the child may express. In fulfilling the specified duties included in Chapter 107 of the Texas Family Code, the attorney will necessarily be assisting the court in fulfilling its purpose to rule in accordance with the best interests of the child. Yet, nothing in Section 107.001 suggests that because the amicus attorney does not "provide legal services to the child," he must be providing legal services to the trial court by process of elimination. Rather, the amicus attorney "by definition does not exactly have a client." John J. Sampson et al., *Texas Family Code Annotated* § 107.007 cmt. (22d ed. 2012).

Section 107.005(b)(4) requires an amicus attorney to become familiar with the American Bar Association's (ABA) standards of practice for attorneys who represent children in child custody cases. TEX. FAM. CODE ANN. § 107.005(b)(4). In discussing the advocacy of the child's best interests, the commentary recommends, albeit in the context of settlement negotiation, that the Best Interests Attorney (the "Best Interests Attorney" in the ABA standards of practice being the practical equivalent of the Texas "amicus attorney") should avoid ex parte communication and "should ordinarily discuss her or his concerns with the parties and counsel . . . , before

12

involving the judge."[5]  In discouraging ex parte communications, the ABA recognizes that the

amicus attorney is not the trial judge's attorney.

> The Texas Supreme Court is very reticent to permit ex parte communications:

> > This court only allows such communications in limited, extraordinary emergency situations.  *See* TEX. R. CIV. P. 592 (Writ of Attachment); TEX. R. CIV. P. 658 (Writ of Garnishment); TEX. R. CIV. P. 696 (Writ of Sequestration); TEX. R. CIV. P. 800 (Proof in trespass to try title action when defendant fails to appear after notice by publication). . . . *See* Supreme Court of Texas, Rules Governing the State Bar of Texas art. X, § 9 (Code of Professional Responsibility) DR 7-110(B) (1987).

*Barnes v. Whittington*, 751 S.W.2d 493, 495 n.1 (Tex. 1988).  Canon 3 of the Texas Code of

Judicial Conduct prescribes:

> (8)     A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.  A judge shall not initiate, permit, or consider *ex parte* communications or other communications made to the judge outside the presence of the parties between the judge and a party, an attorney, a guardian or attorney ad litem, an alternative dispute resolution neutral, or any other court appointee concerning the merits of a pending or impending judicial proceeding.  A judge shall require compliance with this subsection by court personnel subject to the judge's direction and control.  This subsection does not prohibit:

> > (a)     communications concerning uncontested administrative or uncontested procedural matters;

> > (b)     conferring separately with the parties and/or their lawyers in an effort to mediate or settle matters, provided, however, that the judge shall first give notice to all parties and not thereafter hear any contested matters between the parties except with the consent of all parties;

> > (c)     obtaining the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the

---

[5]ABA Section of Family Law Standards of Practice for Lawyers Representing Children in Custody Cases, Section IV, subtit. F cmt. (Aug 2003), *available at* http://www.americanbar.org/content/dam/aba/migrated/domviol/pdfs/0908/Standards_of_Practice_for_Lawyers_Representing_Children.authcheckdam.pdf.

parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond;

      (d)    consulting with other judges or with court personnel;

      (e)    considering an *ex parte* communication expressly authorized by law.

TEX. CODE JUD. CONDUCT, Canon 3.

Although this Court recognizes the exceptional integrity and honesty of the judge of the trial court from which this appeal is taken, we also recognize that the public often misunderstands the role of judges and the decision-making process employed by them. Our justice system's abhorrent reaction to ex parte communications is purposeful. Such communications undermine the principle of transparency which is promoted by the option of conducting proceedings recorded in open court. The Texas Supreme Court has ruled that transparency is something "we strive to achieve in our legal system." *In re Columbia Med. Ctr. of Las Colinas Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009). Ex parte communications do not promote that transparency. We find that the trial court erred in allowing ex parte communications with the amicus attorney.

In civil cases, "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless . . . the error complained of: (1) probably caused the rendition of an improper judgment . . . ." TEX. R. APP. P. 44.1(a)(1). In *Abdygapparova v. State*, our sister court correctly wrote, "The United States Supreme Court has repeatedly held that a violation of the right to an impartial judge is a structural error that defies harm analysis." *Abdygapparova v. State*, 243 S.W.3d 191, 209 (Tex. App.—San Antonio 2007, pet. ref'd). However, the concept of

14

structural error appears to be restricted to criminal application,[6] and the Rules of Appellate Procedure require a harm analysis in civil cases.

When asked about the effect of his recommendation upon the trial judge, Litzler testified:

Well, she told me that she had come to the same conclusion on her own.  But to the extent -- if it helped her reconfirm her opinion, then I guess it probably did help -- help.  It certainly -- it certainly didn't change her opinion, so -- but when I met with Judge Smith, she told me she had come to the same conclusion that the best interest of the child was to -- for Stephen to stay with his mother.

At the conclusion of the hearing on Terry's motion for new trial, the judge remarked, "I can tell you right now that I did my own thinking and made my opinion specifically on what I believed was in the best interest of the child."  In the August 27 letter referenced above, the judge wrote, "Given Mr. Litzler's recommendations and the testimony of the witnesses the Court denies the request to change custody," but also listed her reasons for allowing custody to remain with Glover.  The judge explained:

This child has a great many emotional problems which must be addressed by professionals. Taking him away from his mother at this time would exacerbate his feelings of abandonment and not be in his best interest.  [Glover] is seeking medical and psychological help which is encouraging.  It is obvious the grandmother does not share the need for outside services.

Further, this child will become physically stronger through the years as grandmother becomes physically weaker and unable to deal with his outbursts.

Trial courts have broad discretion to determine what is in a child's best interest; we review a trial court's decision regarding child custody, control, and possession matters for a clear

---

[6]Aside from cases involving juvenile criminal offenders, there is no Texas precedent applying structural error in civil cases.  Other jurisdictions have determined that there is no place for structural error in civil cases. *See In re Detention of D.F.*, 256 P.3d 357, 364 (Wash. 2011) (Johnson, J., concurring) (en banc); *People ex rel. R.D.*, 277 P.3d 889, 895 (Colo. App. 2012); *but see Perkins v. Komarnyckyj*, 834 P.2d 1260, 1261–65 (Ariz. 1992) (en banc); *In re Marriage of Carlsson*, 163 Cal.App.4th 281, 293 (Cal. Ct. App. 2008).

abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see also In re Marriage of Ellis*, No. 06-08-00012-CV, 2008 WL 3834103 (Tex. App.—Texarkana Aug. 19, 2008, no pet.) (mem. op.). Here, Terry waived making a record of the trial proceedings. "It is the burden of the appellant to bring forward a sufficient record to show the error committed by the trial court." *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)).

Without availability of the record at trial, we cannot determine whether the trial court's error in allowing ex parte communications so influenced the trial judge in a pending matter that suggests the error probably caused the rendition of an improper judgment. Further, we cannot determine that the judgment was improper here because the amicus attorney is only to advocate the best interests of the child, and the trial court is required to act in accord with the child's best interests. Therefore, we hold the error, though repugnant, harmless.

## V.        Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

16

CONCURRING OPINION

I agree completely with the majority opinion's holding that an amicus attorney may not engage in ex parte communications with the trial judge. By doing so, both the attorney and the judge violate their respective Rules of Conduct and the judge commits error.

The more difficult question is whether the communication, in this case, creates reversible error. There is authority that an ex parte communication itself is not per se harmful, but proof must be provided that the opposing party's substantial rights have been prejudiced. *Hammack v. Pub. Util. Comm'n of Tex.*, 131 S.W.3d 713, 730 (Tex. App.—Austin 2004, pet. denied) (citing *Vandygriff v. First Sav. & Loan, Etc.* 617 S.W.2d 669, 673 (Tex. 1981)). Most of these have been administrative cases, somewhat different from traditional trials.

The majority opinion concludes that the concept of structural error appears to be restricted to criminal application. By footnote, it is mentioned that structural error applies to juvenile matters (which are civil cases appealed to the Texas Supreme Court). My reading of *In re D.I.B.*, 988 S.W.2d 753, 758 (Tex. 1999), is that in the proper civil case, structural error is recognized by the Texas Supreme Court. The court in *D.I.B.* quoted the Texas Court of Criminal Appeals' discussion of structural error—that some kinds of errors will never be harmless. *Id.* at 759. The Texas Supreme Court found the rationale applicable in civil cases and conducted a harm analysis finding the error in that case did not defy analysis and that there was sufficient data to analyze. *Id.* But the opinion further notes that it was not called upon to decide, and did not decide, if the error was a "structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards." *Id.*

17

My concern is whether this is the kind of error that defies analysis and for which there is insufficient data to analyze its harmful nature. In this case, a record was created at the motion for new trial hearing which we can review. Accepting the testimony of the attorney together with the statements of the trial judge, the majority concludes that no harm resulted from the private conversation. According to the attorney's testimony, he only conveyed to the judge information that he was prepared to give in open court. The judge states she decided the case based on the evidence heard at trial. I have no reason to question this testimony, but I have concerns. By definition, the opposing party is not aware of the information given in secret to the judge. That prevents the party from countering such information with evidence. When one party is unaware of the evidence or information used by a judge to decide a dispute and is unable to challenge it, our adversary system breaks down.

I, too, believe the trial judge and attorney acted in good faith and perhaps even with some authority provided by misguided statements in some appellate opinions (i.e., that the trial judge is the amicus attorney's client). I will accede to the harm analysis—with reservations. The ex parte communication is error; even if no particular harm may be identified in this case, the unidentified harm may be to our legal system and the respect given to our courts by the public.

I concur in the judgment of the court.


                                        Jack Carter
                                        Justice

Date Submitted:        June 4, 2013
Date Submitted:        June 14, 2013

18