

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00004-CV

_____

IN THE INTEREST OF M.O. AND J.A.O., JR., CHILDREN

---

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 11-0340

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

After Emma Wolf and James Oney filed competing petitions to modify the trial court's previous Order in Suit to Modify Parent-Child Relationship, the trial court held a hearing on the petitions and granted Wolf's petition. On appeal, Oney complains that the trial court abused its discretion by (1) denying his motion for new trial, (2) authorizing the amicus attorney for the children to engage in *ex parte* communications, and (3) failing to file findings of fact and conclusions of law. He also asserts that the trial court erred by considering an *ex parte* Child Protective Services (CPS) investigation report during the proceedings. Because we find that (1) the trial court did not abuse its discretion by denying Oney's motion for new trial, (2) the trial court's modification order did not authorize *ex parte* communications, (3) sufficient evidence supports the trial court's modification order, and (4) Oney's complaint regarding a CPS investigation report is without merit, we will affirm the trial court's judgment.

## I.      The Denial of Oney's Motion for New Trial Was Not An Abuse of Discretion

Oney first complains that the trial court abused its discretion when it denied his motion for new trial. He argues that he was entitled to a new trial because the trial court held a final hearing without notice in violation of Rule 245 of the Texas Rules of Civil Procedure. Specifically, he argues that the notice of hearing stated that the trial court would hear Oney's motion for temporary orders, but when the parties appeared, the trial court held a final hearing instead.

### A.      Standard of Review

We review a trial court's denial of a motion for new trial for abuse of discretion. *Storck v. Tres Lagos Property Owners Ass'n, Inc.*, 442 S.W.3d 730, 741 (Tex. App.—Texarkana 2014, pet.

2

denied) (citing *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam)). The trial court's decision may not be overturned unless it "'acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles.'" *Id.* at 741–42 (quoting *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 368 (Tex. App.—Dallas 2005, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991))). In our review, every reasonable presumption is indulged in favor of the trial court's ruling. *Id.* at 742 (citing *El Dorado Motors, Inc.*, 168 S.W.3d at 368).

In contested cases, a trial court may set the case for trial, but must give reasonable notice of at least forty-five days, or by agreement of the parties. TEX. R. CIV. P. 245. While this rule is mandatory, any "[e]rror resulting from a trial court's failure to provide parties proper notice under Rule 245 is waived if a party proceeds to trial and fails to object to the lack of notice." *In re Marriage of Parker*, 20 S.W.3d 812, 818 (Tex. App.—Texarkana 2000, no pet.) (citing *In re J.(B.B.)M.*, 955 S.W.2d 405, 408 (Tex. App.—San Antonio 1997, no pet.); *State Farm Fire & Cas. Co. v. Price*, 845 S.W.2d 427, 432–33 (Tex. App.—Amarillo 1992, writ dism'd by agr.)).

**B.     Analysis**

In this case, the record shows Wolf filed her Petition to Modify Parent-Child Relationship (Petition to Modify) on April 20, 2018. Among her requested modifications, Wolf sought that Oney's visitation with the children be supervised due to family violence and that the court enjoin Shelly Oney, Oney's wife, from being alone with the children. She also sought reimbursement for insurance premiums, temporary orders and a temporary injunction, and a permanent injunction. In response, Oney filed a Petition for Writ of Habeas Corpus, a Motion for Enforcement of Possession and Access (Motion for Enforcement), and an Original Answer and Counter-Petition in Suit

3

Modifying the Parent Child Relationship (Counter-Petition). The trial court signed orders setting a hearing on July 25, 2018, for Oney's Motion for Enforcement and for temporary orders requested in his Counter-Petition. No order setting a hearing on Wolf's Petition to Modify appears in the clerk's record.

Nevertheless, when the trial court asked the parties at the beginning of the July 25 hearing for their announcements, Wolf responded that she was appearing on her Petition to Modify, and Oney announced that he was there on his Petition for Writ of Habeas Corpus, his Counter-Petition, and his Motion for Enforcement. Without objection to proceeding on Wolf's Petition to Modify, the trial court took notice of its file, and the parties then discussed all of the issues in the case, including those modifications requested only in Wolf's Petition to Modify. The trial court then recessed the hearing and instructed the parties to confer in an attempt to resolve the issues through agreement.

When the parties returned, and after some discussion, the trial court stated that the parties could proceed to present evidence on "the stepmom issue," which related to Wolf's Petition to Modify. Oney called two witnesses, the CPS investigator and Oney's mother, to, inter alia, refute Wolf's anticipated testimony that Shelly was a danger to the children. Oney then called Wolf to testify. Prior to Wolf's testimony, the parties informed the trial court that they had agreed on all issues, except whether Shelly could be with the children. Wolf then testified regarding three instances in which Shelly had used corporal punishment on the children that caused bruises that were present for at least two weeks.

4

After Wolf's testimony, the parties read their agreement into the record, then informed the trial court that the only issue was whether Shelly would be allowed around the children. The trial court and the parties then entered into an extended discussion in an attempt to find a practical solution for Oney to exercise his visitation without Shelly being present. After conferring separately with the children, the trial court informed the parties that Oney's visitation with J.A.O., Jr., would take place at Oney's mother's house and that Shelly could not be present, and that Shelly could not be alone with M.O. Without objection, the trial court informed the parties that the order she issued would be a final order.

We believe this record clearly demonstrates that Oney went forward with the hearing on Wolf's Petition to Modify, called witnesses to contest the only issue contained in the Petition to Modify that was not resolved by agreement, and never objected to a lack of notice. Therefore, Oney waived any complaint for lack of notice under Rule 245 and was not entitled to a new trial. *See Parker*, 20 S.W.3d at 818. Consequently, we find that the trial court did not abuse its discretion when it denied Oney's motion for new trial. We overrule Oney's first issue.

## II. The Modification Order Did Not Authorize *Ex Parte* Communications

### A. Factual and Procedural Background

Oney's third issue complains that the trial court abused its discretion by authorizing the amicus attorney for the children to make *ex parte* communications to the trial court. The bulk of Oney's brief on this issue complains of a discussion at the July 25 hearing in which the trial court indicated that the amicus attorney would continue to communicate with the children and report back to the trial court for a period of time. In one cryptic citation, Oney also refers to the Order in

5

Suit to Modify Parent-Child Relationship (the Modification Order). The Modification Order provided that the amicus attorney was to continue her duties for six months after the entry of the order and that, "[w]ithin that six[-]month period, IT IS ORDERED that [the amicus attorney] shall be required to have contact with the children and send reports to the Court." We presume Oney also complains that this provision authorizes *ex parte* communications with the trial court by the amicus attorney.

In both his original and reply briefs, Oney claims that *ex parte* communications took place prior to the entry of the Modification Order and that he was harmed by the inclusion of certain other provisions in the Modification Order as a result of those communications. The record does not support Oney's contentions.

The record shows that, during the July 25 hearing, the following exchange took place:

> [COUNSEL FOR ONEY]: So [the amicus attorney] is going to be communicating with you only and just giving you reports.

> THE COURT: Uh-huh.

> [COUNSEL FOR ONEY]: She's going to be on this case for the duration?

> THE COURT: No. I think we could get a time for a next year that she would be giving reports as to the condition of the children. If you wanted to come in at that point and change it or file for modification, you could change -- you could do that.

At the conclusion of the hearing, the trial court asked counsel for Oney to draft the Modification Order. The parties then negotiated for almost three months about the particular language to be contained in the Modification Order, with clarification by the trial court. The trial court entered the Modification Order on October 19, 2018. Oney then filed a motion for new trial

6

and complained, inter alia, that the Modification Order authorized the amicus attorney to have *ex parte* communications with the trial court for six months. However, at the motion for new trial hearing, both the trial court and the amicus attorney denied that any *ex parte* communications between them had ever taken place, and the trial court went on to state that it "would not communicate with [the amicus attorney] outside of the Court normally unless it was some exceptional thing with notice to [the parties]."

## B. Analysis

Oney argues that the Modification Order provision requiring the amicus attorney to make reports to the trial court authorizes *ex parte* communications with the amicus attorney in violation of the Texas Disciplinary Rules of Professional Conduct and the Texas Code of Judicial Conduct. Oney's argument is meritless.

An amicus attorney is appointed under Chapter 107 of the Texas Family Code "to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." *In re S.A.G.*, 403 S.W.3d 907, 915 (Tex. App.—Texarkana 2013, pet. denied) (quoting TEX. FAM. CODE ANN. § 107.001(1)). It is true that a trial court errs when it allows *ex parte* communications with an amicus attorney. *Id.* at 916. It is also true, as we noted in *S.A.G.*, that the amicus attorney is required to become familiar with the American Bar Association's standards of practice. *Id.* (citing TEX. FAM. CODE ANN. § 107.005(b)(4)). Those standards provide that the amicus attorney should avoid *ex parte* communications. *Id.* It is further true that the Texas Disciplinary Rules of Professional Conduct prohibit *ex parte* communications with a judge for the purpose of influencing a pending matter except in the course of official

7

proceedings, in writing with a copy promptly delivered to opposing counsel, or orally upon adequate notice to opposing counsel. TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.05(b). Moreover, the Texas Code of Judicial Conduct prohibits a judge from permitting or considering "*ex parte* communications . . . made to the judge outside the presence of the parties between the judge and . . . an attorney, . . . or any . . . court appointee concerning the merits of a pending or impending judicial proceeding." *S.A.G.*, 403 S.W.3d at 916 (citing TEX. CODE JUD. CONDUCT, Canon 3(B)(8)).

Nevertheless, there is absolutely nothing in the order or the record that would support Oney's tortured reading of the trial court's order or the reporter's record. Nothing in the Modification Order required the amicus attorney to violate the Disciplinary Rules or her standards of practice by making a report to the trial court without delivering a copy or adequate notice to the parties. Nor is there anything in the Modification Order that indicates that the trial court intended for any report by the amicus attorney to be an *ex parte* communication. Further, the trial court assured the parties at the motion for new trial hearing that she would not communicate with the amicus attorney outside of court, except with adequate notice to the parties.

To reach the conclusion that Oney invites us to reach, we would have to assume that, because the modification order did not specifically instruct the amicus attorney to report to the trial court *in an ethical manner*, then the trial court intended for the reports to be submitted unethically. Were we to adopt that interpretation, we would essentially be creating a presumption that a trial court order requires unethical behavior unless it specifically mandates ethical behavior. We refuse to engage in such sophistry. Instead, we presume that trial courts intend for their orders to be

8

carried out in an ethical manner, and we find nothing here which causes us to question that presumption.

We overrule Oney's third issue.

### III.    Sufficient Evidence Supports the Trial Court's Judgment

In his fourth issue, Oney asserts that the trial court abused its discretion when it failed to file findings of fact after his timely request.[1] Oney argues that he was harmed by the trial court's failure to file findings because he had to guess as to the reasons the trial court stated in its order that Shelly had a history of neglect and restricted Oney's access to the children.

#### A.    Standard of Review

The Texas Supreme Court has recently summarized the law governing findings of fact:

"In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296. The party must file its request within twenty days after the court enters its judgment, and the court clerk must "immediately" bring the request "to the attention of the judge who tried the case." *Id.* The court must file its findings within twenty days of the timely request. TEX. R. CIV. P. 297. If the court fails to file findings within twenty days, the requesting party may file a notice of past due findings within thirty days of the initial request. *Id.* A timely past-due notice extends the judge's deadline to forty days from the party's initial request. *Id.* If the court fails to file findings in response to a proper and timely request, the court of appeals must presume the trial court made all the findings necessary to support the judgment. [*BMC Software Belgium, N.V. v.*] *Marchand*, 83 S.W.3d [789,] 795 [(Tex. 2002)]. A party may rebut the presumption by demonstrating that the record evidence does not support a presumed finding. *See Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987).

---

[1] When the trial court failed to file findings of fact and conclusions of law, Oney timely filed a notice of past due findings of fact and conclusions of law. *See* TEX. R. CIV. P. 297.

9

*Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam) (footnote omitted). The failure of the trial court to file findings of fact (hereinafter findings) places a burden on the appellant of rebutting every presumed finding. *Id.* In complicated cases, this may be so burdensome that it prevents the proper presentation of the appellant's case to the appellate court. *Id.* For instance, when there are two or more grounds of recovery or defenses upon which the judgment could be based, an undue burden is placed on the appellant. *Id.* (citing *Fraser v. Goldberg*, 552 S.W.2d 592, 594 (Tex. Civ. App.—Beaumont 1977, writ ref'd. n.r.e.)).

Consequently, when a trial court fails to file findings in response to a timely and proper request, its error is "presumed harmful, unless 'the record before the appellate court affirmatively shows that the complaining party has suffered no injury.'" *Id.* (quoting *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989) (quoting *Wagner v. Riske*, 178 S.W.2d 117, 120 (Tex. 1944))). However, when the case has but a single ground of recovery, or a single defense, the appellant suffers no harm when the trial court fails to file findings since "he is not forced to guess the reasons for the trial court's judgment." *Liberty Mut. Fire Ins. v. Laca*, 243 S.W.3d 791, 794 (Tex. App.—El Paso 2007, no pet.) (citing *Larry F. Smith, Inc. v. Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied); *Nevada Gold & Silver, Inc. v. Andrews Indep. Sch. Dist.*, 225 S.W.3d 68, 77 (Tex. App.—El Paso 2005, no pet.)).

The trial court is only required to enter findings "on ultimate or controlling issues, rather than on mere evidentiary issues." *In re Marriage of Edwards*, 79 S.W.3d 88, 95 (Tex. App.—Texarkana 2002, no pet.) (citing *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 515 (Tex. App.—San Antonio 2001, pet. denied); *Hill v. Hill*, 971 S.W.2d 153, 155 (Tex. App.—Amarillo 1998, no pet.);

*Gutierrez v. Gutierrez*, 791 S.W.2d 659, 667 (Tex. App.—San Antonio 1990, no writ)). "An ultimate fact issue is one that is essential to the cause of action and seeks a fact that would have a direct effect on the judgment." *Id.* at 95 (citing *Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632, 639 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)). "In contrast, an evidentiary issue is one the trial court may consider in deciding the controlling issue, but is not a controlling issue itself." *Id.* (citing *Winograd*, 695 S.W.2d at 639).

In this case, the parties represented to the trial court that all of the issues had been agreed upon, except one: what access, if any, Shelly would have to the children. This is also the only part of the judgment that Oney complains about in regard to the trial court's failure to file findings. In determining issues of conservatorship and possession of and access to a child, the primary consideration of the court is always the best interest of the child. *In re D.W.G.K.*, 558 S.W.3d 671, 687 (Tex. App.—Texarkana 2018, pet. denied) (citing TEX. FAM. CODE ANN. § 153.002 (West 2014)). Thus, the controlling factual issue is what kind of access to the children is in their best interests. Oney has set forth most of the conflicting testimony regarding Shelly and her relationship with the children in challenging the trial court's restriction on Shelly's access. Therefore, he has not been prevented from presenting his appellate challenge to the restricted access.

We review a trial court's ruling on access under an abuse-of-discretion standard. *In re E.R.C.*, 496 S.W.3d 270, 283 (Tex. App.—Texarkana 2016, pet. denied), *cert. denied*, *Stokes v. Corsbie*, 137 S.Ct. 834 (2017) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). A trial court's order will not be disturbed unless a clear abuse of discretion is shown. *Id.* (citing

11

*Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied)). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any guiding principle." *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.—Texarkana 2004, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Under the abuse-of-discretion standard, "legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion, but are not independent grounds of error." *Matter of the Marriage of McCoy*, 567 S.W.3d 426, 428 (Tex. App.—Texarkana 2018, no pet.) (citing *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.)). In our analysis, we determine "whether the trial court had sufficient evidence on which to exercise its discretion, and, if so, whether it erred in the exercise of that discretion." *Id.* (citing *P.M.G.*, 405 S.W.3d at 410). Based on the evidence, we then determine whether the court's decision was arbitrary or unreasonable. *E.R.C.*, 496 S.W.3d at 283 (citing *Zeifman*, 212 S.W.3d at 588).

In our determination, "we recognize that '[t]he trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record.'" *Matter of the Marriage of Christensen*, 570 S.W.3d 933, 937 (Tex. App.—Texarkana 2019, no pet.) (quoting *Bates v. Tesar*, 81 S.W.3d 411, 424 (Tex. App.—El Paso 2002, no pet.)). We will not find that the trial court abused its discretion "if there is some evidence of a probative and substantive character to support its decision." *Id.* (citing *Bates*, 81 S.W.3d at 424–25).

**B.     Analysis**

At the hearing, Brittany Smith, a CPS investigator, testified regarding her investigation of neglect and sexual abuse allegations concerning Oney and Shelly. When she examined J.A.O, Jr., he had a bruise and a scratch above his eye. Shelly told her that she thought he got the scratch when she grabbed him when she caught him with her girls in a tent, and he got caught on the zipper of the tent. Smith did not believe, based on her investigation, that Shelly would be a danger to the children.

On cross-examination, Smith acknowledged that there could have been other bruises that had resolved since the incident happened a month before her investigation. She also testified that J.A.O., Jr.'s, account of the incident was very different. He told her that Shelly was mean to him and that, when she caught him in the tent, she picked him up and yelled in his face, then made him stand on one foot all day. He told Smith he got scratched when Shelly slung him around the room and he hit his head on the bed.

Although the tent incident[2] also involved two of Shelly's and Oney's daughters, Smith testified that the daughters were not disciplined or harmed in any way. At the time of the incident, Oney was asleep in another room, and Shelly was feeding a baby. Smith also testified that she had reports Oney and Shelly had been investigated for sexual abuse two years earlier when M.O. was caught performing oral sex on Shelly's and Oney's older son.

Wolf testified regarding two other instances when the children returned from Shelly's care with bruises from the corporal punishment inflicted by Shelly that remained for at least two weeks.

---

[2]Two of Shelly's daughters were performing oral sex on J.A.O, Jr.

13

After the tent incident, J.A.O., Jr., also had bruises. At this point in Wolf's testimony, Shelly made an expletive-laden outburst and left the courtroom.

After Wolf's testimony, the trial court expressed its concern regarding Shelly's temper and her inability to control herself. On Oney's motion, the trial court also interviewed the children in its chambers.[3] After its interview,[4] the trial court found that it was in the best interest of J.A.O., Jr., that Oney's visitation with him be conducted at Oney's mother's house, with no access by Shelly. The trial court also found that it was in the best interest of M.O. that Shelly only be around her when another adult is present. The trial court memorialized its findings and access provisions in the Modification Order.

Although there was also testimony from Oney's mother that she thought Shelly was not a danger to the children, the trial court, as the fact-finder, is assumed to have "resolved disputed facts in favor of the finding, if a reasonable fact-finder could do so, and disregarded evidence that the fact-finder could have reasonably disbelieved or the credibility of which reasonably could be doubted." *In re M.L.D.-U., Jr.*, 517 S.W.3d 228, 235–36 (Tex. App.—Texarkana 2017, no pet.) (citing *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam)). Based on Wolf's and Smith's testimony, and Shelly's sudden outburst at the hearing, we find that there was sufficient evidence to support the trial court's exercise of its discretion and that it did not abuse its discretion in finding

---

[3]*See* TEX. FAM. CODE ANN. § 153.009(a) (allowing trial court in a non-jury trial to, inter alia, interview a child under twelve years of age to determine the child's wishes as to conservatorship).

[4]The information obtained in such an interview is supplemental to the evidence taken at the hearing. *In re A.C.*, 387 S.W.3d 673, 677 (Tex. App.—Texarkana 2012, pet. denied).

that it was in the best interests of the children to restrict Shelly's access to the children.[5] *See Marriage of Christensen*, 570 S.W.3d at 937–38. We overrule Oney's fourth issue.

**IV.    Oney's Complaint Regarding the CPS Report Is Meritless**

Oney's second issue asserts that the trial court erred by receiving and considering an *ex parte* CPS investigation report. His complaint arises from a statement made by the trial court prior to testimony, as the parties were discussing the proposed testimony of Smith regarding the CPS investigation. After Wolf offered to stipulate that abuse was ruled out, the trial court stated, "I read the report. I have read the report so I know what it says." Oney asserts that the report was an *ex parte* communication with the trial court and that it erred in considering it.

The parties dispute the nature of the "report" to which the trial court referred. Oney contends that the "report" was a CPS investigation report, which does not appear in the record. Wolf contends that the "report" was a letter from Smith to Oney reporting on the results of her investigation, which was attached as Exhibit 1 to Oney's First Amended Original Answer (Oney's Amended Answer) and filed two days before the July 25 hearing.[6] A review of the record in this case does not support Oney's contentions.

Exhibit 1 to Oney's Amended Answer consists of a letter on Texas Department of Family and Protective Services letterhead dated June 26, 2017, from Smith to Shelly, referencing "Case #45273452; Notice of Findings of CPS Investigation." The letter contains a table with the headings

---

[5]Although restricting Shelly's access to the children may affect how Oney exercises his visitation with the children, the record shows that the trial court attempted to find a way that Oney could exercise his rights in the least burdensome manner, while still protecting the children.

[6]Oney does not complain that the trial court erred in reviewing the amended answer and its attachment.

"Alleged Perpetrator," "Alleged Type of Abuse or Neglect," "Alleged Victim," and "Finding." It also contains underlined headings for each paragraph of the letter, with a formal explanation of the subject matter in the paragraph. Because of the nature and form of the letter, it could easily be viewed and referenced as a "report." In the context of the discussion at the July 25 hearing, it appears that both the trial court and the parties understood that this was the "report" the trial court was referencing.

Oney did not object to the trial court having read the "report" at the time. Rather, he waited to complain until the hearing on his motion for new trial. At the hearing on his motion for new trial when Oney accused the trial court of receiving a CPS investigation report as an *ex parte* communication, the trial court protested:

> THE COURT: Now, whoa, just a minute. That was just in the file as I remember.

> [COUNSEL FOR ONEY]: It was not filed with the Court. I have a certified copy of the Court's file and all documents that have been filed.

> THE COURT: There was some reference to it somewhere.

> [COUNSEL FOR ONEY]: It was referenced by Ms. Baxter. She said that the Report --

> THE COURT: Let me make it real clear about something. There was no Ex Parte communications going on.

An appellant has the burden to bring forth a record showing reversible error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam). This record does not support Oney's

contention that the trial court received and considered an *ex parte* CPS investigation report. Therefore, we find that this issue is without merit. We overrule Oney's second issue.[7]

For the reasons stated above, we affirm the judgment of the trial court.

Ralph K. Burgess
Justice

Date Submitted:     May 30, 2019
Date Decided:       June 19, 2019

---

[7]It is disturbing that Oney's counsel has asserted several times in her brief unethical behavior by the trial court without any substantial basis for doing so. The only way the record could possibly support her arguments would be for us to adopt the most sinister interpretation of the facts possible. Essentially, counsel assumes that, when the trial court stated it was familiar with the report and had read it, then it must have been referring to an *ex parte* review of an unfiled report. Yet, the record fully supports the more reasonable conclusion that the trial court was referring to the report counsel herself attached to Oney's Amended Answer. Not only that, but both the trial court and the amicus attorney unequivocally denied engaging in any *ex parte* communications, and the record reflects no evidence that challenges the veracity of those statements. Thus, counsel's arguments are, at best, mere conjecture. As noted, we presume that trial courts and attorneys act ethically, not the other way around. Accordingly, counsel would be well-advised to refrain from making further accusations of unethical behavior by a trial judge without more support than what is presented in this record.

17