

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00103-CR

---

JOHNNY RAY MULDROW, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 25549

---

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Justice Moseley

---

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

After a routine traffic stop led to the discovery of "a rolling meth lab," driver Johnny Ray Muldrow was convicted by a jury of possession of 200 grams or more but less than 400 grams of methamphetamine. After he had been convicted by a jury, Muldrow pled "true" to two enhancement allegations, elected to have the trial court assess punishment, and was sentenced to fifty years' imprisonment. On appeal, Muldrow argues (1) that the statutes under which he was convicted—Sections 481.115(e) and 481.002(49) of the Texas Health and Safety Code—are facially unconstitutional and (2) that the evidence is legally insufficient to support the jury's finding of guilt. We find that Muldrow failed to preserve his complaint that Sections 481.115(e) and 481.002(49) are void for vagueness and inadequately briefed the remaining grounds arguing that these sections are unconstitutional. We further find that the evidence was legally sufficient to support the jury's verdict. Consequently, we affirm the trial court's judgment.

## I.    The Constitutional Complaints are Either Unpreserved or Inadequately Briefed

Section 481.115(e) of the Texas Health and Safety Code makes possession of a Penalty Group 1 controlled substance a first degree felony "if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, 200 grams or more but less than 400 grams." TEX. HEALTH & SAFETY CODE ANN. § 481.115(e) (West 2010). Section 481.002(49) defines an "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (West Supp. 2014).

2

In a written objection filed with the trial court, Muldrow argued that both of these sections are facially unconstitutional. Specifically, Muldrow made the following argument:

> These statutes are facially unconstitutional because they violate the Equal Protection Clause by subjecting minor drug users, dealers, and manufacturers to the same punishment as major drug dealers and manufacturers. These statutes are not rationally related to the State's interest in punishing major drug dealers more severely than minor drug dealers, under a market-based approach, because they do not require the State to prove the chemical composition and weight of the actual illegal substance.
>
> Secondly, the statutes violate the Due Process Clause because they permit the State to secure a conviction for dirt, bong water, bathtub water, pool water, ocean water, or bleach that contains traces of methamphetamine under a heavier weight classification, which is subject to higher minimum sentence than the weight classification of the actual usable amount of controlled substance possessed. These statutes also violate[] the Eighth Amendment's prohibition of cruel and unusual punishment. Defendant should be charged only with the usable amount of methamphetamine that he is alleged to have possessed and not the unusable substance.

The trial court overruled Muldrow's constitutional challenges.

On appeal, Muldrow raises several grounds for his constitutional challenge to Sections 481.115(e) and 481.002(49). The first ground argues that these sections are void for vagueness. Specifically, he asks this Court to determine whether the terms "regardless" and "quantity," included within Section 481.002(49), render both challenged sections vague.

To preserve a complaint for our review, a party must first present to the trial court a timely objection stating the specific grounds for the desired ruling if not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). The objection lodged before the trial court must comport with the ground asserted on appeal. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). Because Muldrow did not challenge Sections 481.115(e) and 481.002(49) on the ground that they were void for vagueness and because this

3

argument is not otherwise apparent from the context of the written objection, he has failed to preserve this issue for our review. *See Mays v. State*, 318 S.W.3d 368, 388 (Tex. Crim. App. 2010); *In re S.A.G.*, 403 S.W.3d 907, 913 (Tex. App.—Texarkana 2013, pet. denied) (finding issue unpreserved where, although appellant "voiced several objections on constitutional grounds below, the idea that [the challenged] statutes were void for vagueness was not among those objections").

Next, although Muldrow mentions on appeal that both the Equal Protection Clause and Due Process Clause challenges 78were raised below,[1] he recites the written objection, which we excerpted above, without any citation to relevant legal authority. "This Court has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record,'" as the appellant is required to do pursuant to the Texas Rules of Appellate Procedure. *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (quoting TEX. R. APP. P. 38.1(i)). We have found no and are unaware of any authority supporting Muldrow's position. After carefully reviewing Muldrow's brief, we find this challenge inadequately briefed. Thus, we find that Muldrow has waived his remaining constitutional challenges to Sections 481.115(e) and 481.002(49). *See id.*; *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992).

## II.     Legally Sufficient Evidence Support's the Jury's Finding of Guilt

In his second point of error, Muldrow argues that the evidence is legally insufficient to support the jury's finding of guilt. In evaluating legal sufficiency to determine whether any

---

[1]On appeal, Muldrow abandoned his Eighth Amendment argument to the challenged sections.

4

rational jury could have found possession of 200 grams or more but less than 400 grams of methamphetamine beyond a reasonable doubt, we will review all the evidence in the light most favorable to the jury's verdict. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J, concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Looking at the elements of the offense with which he was charged, it was the duty of the State to prove that (1) Muldrow (2) intentionally or knowingly (3) possessed methamphetamine (4) in an amount of 200 grams or more but less than 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(e). "To prove unlawful possession of a controlled substance, the State

must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2014). Here, Muldrow claims only that the State was unable to prove that the methamphetamine belonged to him.

Muldrow's troubles began with Timothy Keel, a Texas state trooper, who stopped the speeding vehicle that Muldrow was driving and discovered that he did not have a driver's license. In the course of questioning Muldrow, Keel determined that Muldrow was exhibiting possible signs of recent methamphetamine consumption. Keel, who was acquainted with Muldrow and his manner of speech, testified that Muldrow was speaking unusually fast, "kept twitching in his seat" and was "grinding at his teeth." Keel decided to question Muldrow's passenger, Cynthia Frisbee. Frisbee admitted to Keel that the vehicle belonged to her and that the license plates on the vehicle were stolen from another car. Keel arrested Muldrow for driving without a license and Frisbee for using fictitious plates.

After Muldrow and Frisbee were secured, Keel searched the vehicle. Inside the car, Keel found rolling papers, a glass pipe used to smoke methamphetamine and, behind the driver's seat, a clear plastic bag containing marihuana. Frisbee claimed these items as hers. According to Keel, Muldrow "said his stuff was in the back." Keel then popped the vehicle's hatchback and found it full of items including suitcases containing men's clothing and a large blue bag that emitted a pungent chemical smell, even from a distance of four feet away. Inside the blue bag, Keel found a methamphetamine pipe and a number of items commonly associated with the

6

manufacture of methamphetamine, including an unknown white powder, a grinder commonly used to grind pseudoephedrine pills, Drano, lye, glass bottles containing acid, nail polish, hydrogen peroxide, a bottle containing a gas treatment, powdered iodine, coffee filters, plastic tubing, a funnel, a strainer, gloves, measuring cup, an Igloo thermos, skillet, hotplate, glass pie plates, digital scales, plastic baggies, and several unused syringes. Keel described the blue bag as "a rolling meth lab." According to Brian Perry, an investigator with the Texas Department of Public Safety (TDPS), the items in the blue bag were components of a red phosphorus methamphetamine laboratory.

At trial, Frisbee explained that Muldrow was her business partner in a joint venture to manufacture methamphetamine. She spent every day with Muldrow and taught him how to prepare the drug. Together, they manufactured methamphetamine at Muldrow's residence. To obtain the required pseudoephedrine pills without being placed under suspicion of their illegal activities, Frisbee and Muldrow would travel to downtown Dallas and would enlist the homeless in purchasing the pills for them in exchange for money. It was during such a trip that Keel stopped Frisbee's vehicle.

Frisbee testified that the blue bag contained "everything that you need in order to make dope," that she had left the bag at Muldrow's home on the night before the trip, and that Muldrow was aware of the bag's contents. According to Frisbee, Muldrow loaded the blue bag into the car before they left for Dallas. Frisbee admitted that both she and Muldrow smoked methamphetamine during the drive and that they were both high when they were stopped by Keel. When Frisbee heard the patrol unit's lights and sirens, she decided to eat the only usable

7

methamphetamine found in the vehicle. She told Keel about the marihuana in hopes that he would be content with the find and would not continue searching the vehicle. Because she knew that Keel would run the vehicle's license plates, she admitted that the plates were stolen and hoped for leniency.

Claybion F. Cloud, III, a forensic chemist with the TDPS crime laboratory, tested some of the contents of the blue bag. Cloud determined that the blue bag contained the leftover byproducts of a methamphetamine cook that had already occurred. Frisbee testified that the Igloo container that was in the bag had held liquid byproduct and that there would have been up to a gram of methamphetamine that could have been extracted from this liquid. Cloud testified that the liquid, comprised of mostly water and some methamphetamine, weighed 1,290 grams. Cloud also tested a reaction vessel that contained 0.3 grams of methamphetamine residue, a mason jar holding 4.17 grams of liquid containing methamphetamine, and a plastic bag containing 84.81 grams of a crystalline form of dimethyl sulfate—a popular cutting agent for methamphetamine—that had "hardly any meth in there at all." In total, the amount of methamphetamine, together with adulterants and dilutants, exceeded a thousand grams.

Despite this evidence, Muldrow argues that there is no evidence that he, as opposed to Frisbee, possessed the methamphetamine. However, it is well established that an accused may jointly possess contraband with another and that possession need not be exclusive. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

Possession may be established by proving either actual or constructive possession. *Id.* While mere presence at the location where drugs are found is insufficient, by itself, to establish

8

actual care, custody, or control of those drugs, presence or proximity to drugs when combined with other direct or circumstantial evidence may be sufficient if the proof amounts to more than a strong suspicion. *Evans*, 202 S.W.3d at 161–62. Unless the accused had exclusive possession of the place where the controlled substance was found, the State must present "additional independent facts and circumstances which affirmatively link the accused to the contraband" in order to prove possession beyond a reasonable doubt. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.— Texarkana 1998, pet. ref'd). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

As stated in *Bussey v. State*,

> A nonexclusive list of affirmative links that can be sufficient, either singly or in combination, to establish possession of contraband includes: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) making incriminating statements when arrested, (7) attempting to flee, (8) the making of furtive gestures, (9) the presence of an odor of contraband, (10) the presence of other contraband or drug paraphernalia, (11) the ownership of or the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct indicating a consciousness of guilt, (15) the quantity of the contraband, and (16) the accused's presence in a suspicious area under suspicious circumstances.

*Bussey v. State*, No. 06-13-00152-CR, 2014 WL 1390475, *4 (Tex. App.—Texarkana Apr. 9, 2014, no pet.) (mem. op., not designated for publication) (citing *Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd);

9

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830).

The number of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.) (holding that number of links is less important than degree to which links tend to connect defendant to controlled substance). Here, although the vehicle did not belong to him, Muldrow was one of two people present during the search of the enclosed space. Although the blue bag was not in plain view, Frisbee testified that Muldrow loaded the blue bag, and Keel testified that anyone who loaded the bag would have been able to smell the pungent chemical odor that it emitted. As the driver of the vehicle, Muldrow had the keys to open the hatchback to access the blue bag. Frisbee testified, and Keel suggested, that Muldrow was under the influence of methamphetamine during the traffic stop. A bag of marihuana was also found beneath the driver's seat. Thus, links 1, 3, 4, 5, 9, 10, and 12 were established by the evidence. Importantly, Frisbee's testimony that Muldrow was her partner in the venture to produce methamphetamine removed Muldrow from the category of an innocent bystander and demonstrated his joint and conscious possession of the blue bag's illegal contents. We find that the logical force of these links and the evidence, taken together, has a very strong tendency to connect Muldrow to the methamphetamine.

We find that there is ample evidence to support the jury's finding that Muldrow knowingly possessed methamphetamine in the amount alleged in the State's indictment.

10

Accordingly, we find the evidence legally sufficient to support Muldrow's conviction and overrule his last point of error.

## III.   Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     December 16, 2014
Date Decided:       January 9, 2015

Do Not Publish

11