UNITED STATES FIDELITY AND
GUARANTY COMPANY,
Appellant,

v.

Altha Jewel SLAUGHTER, a widow, Betty Jewel York, Wanda Joy Burns, Lloyd Slaughter, Gary Nelson Slaughter, Larry Dwight Slaughter and Steven Dale Slaughter, Appellees.

No. 08–91–00368–CV.

Court of Appeals of Texas,
El Paso.

July 29, 1992.

Rehearing Overruled Aug. 26, 1992.

W. Stacy Trotter, Joel B. Locke, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, for appellant.

John H. Green, Odessa, for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This case involves the application of the personal convenience doctrine in a workers' compensation death case. We agree with the trial court that the evidence established the worker was within the course and scope of his employment at the time of his injury, which ultimately led to his death. We further hold that any error in the admission of a statement made by the injured man to his son shortly after the accident was harmless, as other independent evidence fully supported the trial court's judgment. We, therefore, affirm the judgment of the trial court awarding death benefits under the Texas Workers' Compensation Act.

## FACTS

A small oil field service company in Odessa, Basin Testers, Inc., employed R.B. Slaughter for approximately twelve years. His job duties, although never spelled out, were to serve as "go-for" or "jack-of-all-trades." Some of R.B. Slaughter's duties included finding, buying and inventorying parts; cleaning tools; cleaning around the building; delivering equipment to the oil field; answering the telephone after hours; locking the work area and office after the last employee came in for the night; and providing informal security around the area.

On March 3, 1987, as he was leaving around 5 p.m., Slaughter's supervisor, George Lambert, saw Slaughter cleaning tools in a vat of kerosene-type liquid. Slaughter was waiting for the last tester out in the field, William Richardson, to return so he could lock the building. When Richardson returned at 6:30 p.m., he found R.B. Slaughter lying next to a shower that was provided by the company for the use of all employees. His body was lying outside the shower, his feet within and the water was running. Richardson immediately called an ambulance, which arrived within ten minutes. Mr. Slaughter was transported to an Odessa hospital.

Mr. Slaughter's son, Larry Slaughter, testified over objection that his father had spoken with him at the emergency room following the fall. The son stated that his father told him he had been cleaning tools while waiting for Richardson to return. He splashed cleaning solvent on himself, and showered while waiting for Richardson. He heard the phone ring, stepped out of the shower to answer it, and could remember nothing else.

Mr. Slaughter suffered a broken neck and eventually died from his injuries. His widow brought a claim for death benefits under the Workers' Compensation Act.

The only matter in controversy is whether Mr. Slaughter was in the course and scope of his employment at the time he fell in the shower. After a bench trial, the trial court found that he was on the job and awarded benefits under the Act.

## EVIDENCE OF COURSE AND SCOPE

In Appellant's Points of Error Nos. Four and Five, the insurance company argues that the *res gestae* statement of R.B. Slaughter was improperly admitted, and that without it there was no evidence, or insufficient evidence, establishing Mr. Slaughter was within the course and scope of employment at the time of his fall. We disagree, finding there is evidence of course and scope without considering the injured man's statements.

In a bench trial, the judge's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards applied in reviewing the legal or factual sufficiency of the evidence that support jury findings. *Gill Savings Association v. Chair King,*

*Inc.*, 783 S.W.2d 674, 676–7 (Tex.App.—Houston [14th Dist.] 1989), *aff'd in part, mod'f in part, remanded in part*, 797 S.W.2d 31 (Tex.1990); *Aerospatiale Helicopter Corp. v. Universal Health Services, Inc.*, 778 S.W.2d 492, 497 (Tex.App.—Dallas 1989, writ denied), *cert. denied*, — U.S. ——, 111 S.Ct. 149, 112 L.Ed.2d 115. In reviewing the factual sufficiency of fact findings, we examine all of the evidence, and sustain if there is sufficient evidence of probative force to support the finding. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Carrasco v. Goatcher*, 623 S.W.2d 769 (Tex.App.—El Paso 1981, no writ). In reviewing their legal sufficiency, we view the evidence in the light most favorable to the findings, and affirm if any evidence, more than a scintilla, supports the trial court's conclusion.

The insurance company challenges the following findings of fact:

Ralph B. Slaughter received an injury on or about March 3, 1987, in the course of his employment with BASIN TESTERS, INC.

. . . . .

The accidental injury received by Ralph B. Slaughter on March 3, 1987, in the course of his employment was a producing cause of his death on July 23, 1987.

### PERSONAL CONVENIENCE DOCTRINE

Here, completely setting aside the challenged evidence regarding the statement Mr. Slaughter made to his son, there is still sufficient evidence to withstand both legal and factual sufficiency review.

The personal comfort or convenience doctrine allows for workers' compensation recovery though an employee is not immediately engaged in tasks benefiting the employer at the time of his or her injury:

Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the de-parture is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment. 1A Larson, Worker's Compensation Law § 21.00 (1992).

The Texas Supreme Court, in *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.*, 701 S.W.2d 243, 245 (Tex. 1985), examined this doctrine in a case where an employee at her duty station had just finished a telephone call home to her daughter. The telephone cord twisted around a coffee urn, and it overturned, spilling hot coffee on the employee. In finding the woman entitled to benefits, the Court held:

An employee need not have been engaged in the discharge of any specific duty incident to his employment; rather an employee in the course of his employment may perform acts of a personal nature that a person might reasonably do for his health and comfort, such as quenching thirst or relieving hunger; such acts are considered incidental to the employee's service and the injuries sustained while doing so arise in the course and scope of his employment and are thus compensable. *Yeldell*, 701 S.W.2d at 245.

This is the standard we apply in determining whether Mr. Slaughter was within the scope of his employment when he fell in the shower.

In another personal convenience case, a tool-pusher on a drilling rig choked to death on a piece of steak while eating dinner in a company-provided trailer house. The Corpus Christi Court of Appeals held that the 24–hour on-call employee was within the scope of his employment. *Texas Employers' Insurance Association v. Prasek*, 569 S.W.2d 545 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The Court noted that the employer provided facilities for employees to use for personal necessities while on the job, although the record did not establish whether the employer provided the workers' meals. It held there

was proof Mr. Prasek was engaged in the furtherance of his employer's work at the time of his choking, even though he was not performing any specific duty; and that the injury "originated in" or "had to do with" the employer's work. *Prasek*, 569 S.W.2d at 548. Thus, that Court concluded claimants were entitled to death benefits under the workers' compensation act.

In a very recent opinion by this Court, the personal convenience doctrine was further refined. That case characterized the doctrine as one where a claimant must actually satisfy a two-prong test: that the injury occurred within the course and scope of the job, *and* that the injury would not have occurred *but for* the conditions and obligations of employment which placed the employee in danger. *Employers' Casualty Company v. Bratcher*, 823 S.W.2d 719, 721 (Tex.App.—El Paso 1992, writ pending). In *Bratcher*, the employee died of a ruptured berry aneurysm, triggered by straining during a bowel movement. The *Bratcher* Court found that the aneurysm could have burst at any time. His death did not occur *but for* his being at work, but was caused by a preexisting condition. There, the risk of death was one claimant would have confronted no matter what his activity at the time of rupture.

█ Plaintiff had to prove, under these authorities, that R.B. Slaughter was within the time and space limitations of his job duties when he showered on March 3, 1987.[1] The insurance company maintains that without Mr. Slaughter's *res gestae* statements to his son, the evidence of course and scope fails. We do not agree with this conclusion. Evidence before the trial court established that: R.B. lived in a trailer provided by the company, on its premises; he had no set working hours, but was a "24-hour man"; it was his habit to lock the building after the last tester had returned each night, and when he fell the last tester had not yet returned; Slaughter was the only employee who had keys to lock the office after 5 p.m.; he was last seen before his fall, around 5:30 p.m., cleaning tools in a vat of solvent; he would sometimes answer the telephone after 5 p.m. if the answering service did not pick up the line; he occasionally would take jobs over the phone at night and inform the dispatcher at home; he would occasionally deliver parts to broken-down trucks after hours. Mr. Slaughter was there to do whatever was needed, and was expected to be around to perform specific tasks as asked. All the duties described benefited Basin Testers.

On the other hand, there was evidence that Slaughter had no specific duties to perform, but did "anything you asked him to do and a lot of things you didn't ask him to do." He did not carry a beeper, as did the other 24-hour employees, but he was generally available at the office telephone. The company did not furnish soap, towels or other bathing materials to employees. Slaughter was never instructed by his employer to bathe. The testers each had keys to the shop, so Slaughter did not have to stay and lock up, and sometimes he did not.

Under these facts, the trial court was thoroughly justified in concluding Mr. Slaughter was within the course and scope of employment when he fell in the shower. The undisputed testimony was that he locked up the office and shop when he was there, answered the business telephone, relayed job orders to the dispatcher and occasionally took parts out to trucks in the field, all after 5 p.m. His posture when found tended to show he was interrupted during his shower. Mr. Slaughter performed numerous tasks after 5 p.m., as needed. His job was to be there, and he was within the confines of that job description when he fell. Although claimants cannot prove *exactly* what Mr. Slaughter intended to do at the moment he fell,[2] the personal convenience doctrine does not require such specificity. Showering was a personal act, but it was performed incidentally to Mr. Slaughter's job duties. The trial court correctly found Mr. Slaughter to

---

1. It is not disputed that but for the conditions and obligation of his employment, Slaughter would not have been placed in danger.

2. That is, they cannot prove it if the *res gestae* statement is not considered.

be within the course and scope of his employment. We, therefore, overrule Points of Error Nos. Four and Five.

### ADMISSION OF *RES GESTAE* STATEMENT

■ The insurance company's first three points of error urge that the trial court's admission of the conversation between Larry and R.B. Slaughter was error. The company contends the statements of Mr. Slaughter were hearsay, not *res gestae*, and violated the deadman's statute. Because there was sufficient independent evidence to support the judgment without considering the disputed statement, however, any error in its admission was harmless. We, therefore, need not address Points of Error Nos. One through Three.

### CONCLUSION

Even disregarding Larry Slaughter's *res gestae* testimony, there was adequate evidence upon which the trial court could conclude that Mr. Slaughter was within the course and scope of his employment at the time of his unfortunate fall. We, therefore, conclude the admission of that statement could not have harmed the insurance company. We affirm the judgment of the trial court for death benefits under the Workers' Compensation Act.