# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00286-CV

**J. T. and P. T., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
### NO. 19157, HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants J.T. (Father) and P.T. (Mother) appeal from the trial court's order terminating their parental rights to their minor children, C.T.1, C.T.2, J.T.1, J.T.2, and K.T.[1] Father and Mother argue that the trial court abused its discretion by admitting hearsay evidence of the children's reports to the court. They also contend that the evidence is legally and factually insufficient to support the termination of their parental rights. We will affirm the trial court's order terminating their parental rights.

---

[1] To protect the privacy of the parties, we refer to the children, their parents, and other family members by their initials or by their relationship to the children. *See* Tex. Fam. Code § 109.002(d).

The Texas Department of Family and Protective Services (the Department) received its first referral concerning Father and Mother in 2004, and the Department had multiple interactions with this family in the following years. In March 2014, Father and Mother were arrested for drug possession. The children were then removed from their parents' care and were placed with Father's parents, M.T. (Grandfather) and P.T.2 (Grandmother). The Department also brought this suit seeking managing conservatorship of the children and termination of Father's and Mother's parental rights. In June 2014, the children were removed from their grandparents and placed in foster homes because of concerns that Grandmother was unable to care for them and was using marihuana.

The case was tried to a jury, and the jury found that Father and Mother each engaged in conduct satisfying the statutory grounds for termination listed in subsections (D), (E), (N), (O), and (P) of Texas Family Code section 161.001(1). *See* Tex. Fam. Code § 161.001(1).[3] The jury also found that it was in the children's best interest for Father's and Mother's parental rights to be terminated and that the Department should be named managing conservator of each child. *See id.*

---

[2] The facts recited in this opinion are taken from testimony and exhibits admitted at trial. Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's termination order, we do not exhaustively detail the evidence. *See* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming jury's termination findings).

[3] After this case was filed in the trial court, the Legislature amended section 161.001 by adding subsection (a). *See* Act of Apr. 7, 2011, 82d Leg., R.S., ch. 1, § 4.02, 2011 Tex. Gen. Laws 1, 9–11 (amended 2015) (current version at Tex. Fam. Code § 161.001(b)(1)). Section 161.001(1) was therefore renumbered as section 161.001(b)(1). This amendment does not affect our analysis, and we use the previous numbering throughout our opinion.

§ 161.001(2). The trial court signed an order terminating Father's and Mother's parental rights, and this appeal followed.

## DISCUSSION

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. *Id.* § 161.001. The parents contend that the evidence is legally and factually insufficient to support the termination of their parental rights. "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the legal sufficiency of the evidence in a parental-termination case, we consider all the evidence in the light most favorable to the finding and determine whether a reasonable fact-finder could have formed a firm belief or conviction that its finding was true. *See id.* When reviewing the factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). We assume that the jury resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the jury could not reasonably have formed a firm belief or conviction that its finding was true. *Id.*

3

The parents' brief, liberally construed, challenges the sufficiency of the evidence supporting the jury's findings that Father and Mother engaged in conduct satisfying the statutory grounds for termination found in section 161.001(1)(D) and (E)—that is, that Father and Mother knowingly placed or allowed the children to remain in conditions or surroundings which endangered the children or knowingly placed the children with persons who engaged in conduct which endangered the children. However, their brief does not challenge the jury's findings that Father and Mother engaged in conduct satisfying the statutory grounds found in subsection (N), (O), or (P). Father and Mother have therefore waived any challenge they may have to the jury's findings under those subsections. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."); *Gamez v. Texas Dep't of Family & Protective Servs.*, No. 03-09-00190-CV, 2009 WL 4456150, at *7 n.8 (Tex. App.—Austin Dec. 1, 2009, no pet.) (mem. op.) ("[T]he unchallenged finding concerning subsection (O) alone is sufficient to support the district court's order terminating Gamez's parental rights."); *Toliver v. Texas Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Holloway does not challenge the sufficiency of the evidence supporting the findings under [subsections (F), (N), and (O)], and thus he waives any complaint about the sufficiency of the evidence to support these findings."). Because each of the unchallenged findings is sufficient to support the trial court's order, we will proceed to consider the parents' argument that the evidence is insufficient to support the jury's finding that the termination of their parental rights is in the children's best interest.

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the fact-finder from finding that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the presence of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved of on other grounds by J.F.C.*, 96 S.W.3d at 267 n.39.

We conclude that the *Holley* factors weigh heavily in favor of a determination that it is in the children's best interest for their parents' rights to be terminated. Both Father and Mother admitted at trial to extensive histories of drug abuse. Mother testified that she used marihuana before and after meeting Father. Mother also testified that they started using cocaine about a year after C.T.1 was born and that she believed she was "on methamphetamines" in 2007. Mother further testified that she could not be specific about "timelines" because her memory had been impaired by her drug use. In addition, Mother testified that Father "was really bad on prescription pills at one

point in time" and stated, "We were all scared we were going to lose him at the time he was taking prescription drugs . . . ." In her testimony, Mother also described the circumstances surrounding Father's arrest for manufacture and delivery of a controlled substance. Finally, Mother admitted to being an alcoholic.

Father testified that he had used marihuana and cocaine. He also testified that he began using methamphetamines around 2005. Father further testified that he joined the military to "get [him] and his family away from the drugs" in 2007. In addition, a deputy with the Lampasas County Sheriff's Department testified that in March 2014 he found Father and Mother standing near a parked vehicle containing pills, a syringe, and a marihuana "roach." The deputy went on to testify that he arrested Father and Mother for possession of marihuana and that a glass pipe containing crystal methamphetamine was later discovered in the vehicle.

The jury also heard testimony concerning violence between Mother and Father and between Mother and Grandmother. For example, Mother testified that she had "always been that fighting type since [she] was young" and that she had been arrested when she "slapped [Grandmother] in the back of the head while she was drunk." Mother also testified, "I really didn't go to the cops because a lot of the time I would initiate the fight, and I was either intoxicated or I wasn't in my right mind." In addition, Mother stated, "If it wasn't for [Grandmother] and [Grandfather], there ain't no telling where our kids would be because of mine and [Father's] addictions and our fights and stuff." Indeed, Mother was incarcerated for arson at the time of trial because, as Mother testified, "I blew up [Father's] car."

The Department also presented evidence that the children were exposed to drug use and violence while residing with their parents and grandparents. Grandmother testified that she

uses marihuana, and Grandfather testified that, until this case began, he was not aware that Grandmother uses marihuana. Donna Lilley, a foster parent with whom some of the children had been placed, testified that the children in her care had told her about various instances in which their parents used drugs. According to Lilley, C.T.1 said that there were syringes in their parents' room and that he once had to prevent K.T. from poking herself with one of them. Lilley also testified that the children "told us numerous times they would be out with Mom and Dad and they would go over to a drug dealer's house to buy drugs."

In addition, Lilley testified that the children "all indicated they had bruises" from being hit or beaten. Lilley also testified that C.T.1 had "severely impacted bowels" when he arrived at her home and that C.T.1 had explained to her that "he was holding it intentionally because he didn't want to go out into the other rooms of the house and hear the fighting that was going on." According to Lilley, C.T.1 had told her that there "would be fighting with the adults towards the children, but that also could be fighting among the adults themselves." Specifically, C.T.1 had told her about an incident in which "Grandma [was] fighting with Mom, and that Mom was thrown on the floor. Grandma was on top of her, hitting her."

The Department also presented evidence that the children had been exposed to pornography and sexual activity. Deborah Hernandez, a caseworker from the Department, testified that "[a]ll four of the girls have had sexual-acting-out issues." According to Hernandez, "all four of the girls would masturbate in front of other people" and "just really didn't have any boundaries." In addition, Juanita Hamilton, a conservatorship worker with the Department, testified that the children made comments to her "about porn and watching their parents have sex." Hamilton testified that J.T.1 had "talked about watching porn" and had explained that "there used to be a hole in the

7

wall and they could see their parents having sex." Hamilton also testified that C.T.2 had stated that "they would look under the door" and watch their parents having sex.

Morever, the jury heard testimony from the Court Appointed Special Advocate (CASA) worker Paula McGregor. McGregor testified that J.T.1, who, the record indicates, was eight years old at the time of trial, knew what a condom was and what it was used for. McGregor further testified that when she asked J.T.1 how she knew about condoms, J.T.1 had told her "that she had seen her dad put one on when him and her mom was having sex, and she later asked him what it was for and he told her."

Finally, Lilley testified that both C.T.2 and J.T.1 told her that they had been able to watch pornography and that C.T.2 used Lilley's husband's phone to access pornography on the internet shortly after the children arrived at Lilley's home. Lilley also testified that J.T.1 "almost immediately started acting out sexually" when she arrived in the foster home. According to Lilley, J.T.1 had to be removed from their home after she asked if she could perform oral sex on Lilley's husband, watch while Lilley did so, or watch while Lilley and her husband had sex.

We have not attempted to reproduce all of the evidence from the record supporting the jury's best-interest finding. *See supra* n.2. We conclude, in light of the evidence summarized above, that a reasonable fact-finder could have formed a firm belief or conviction that this finding was true, that a reasonable fact-finder could have resolved disputed evidence in favor of its finding, and that disputed evidence is not so significant that the jury could not reasonably have formed a firm belief or conviction that its finding was true. Therefore, we conclude that the evidence was legally and factually sufficient to support the jury's finding that the termination of Father's and Mother's

parental rights is in the children's best interest.  Accordingly, we overrule Father's and Mother's

second issue.**4**

## CONCLUSION

Having overruled each of Father's and Mother's issues, we affirm the order of the

trial court terminating their parental rights.

---

**4** In their first issue, Father and Mother contend that the trial court abused its discretion by admitting into evidence three child statements, each of which was labeled "Child's Report to the Court."  However, because we conclude that the evidence was legally and factually sufficient to support the trial court's termination order without considering these statements, any error the trial court may have committed in admitting the statements was harmless.  *See United States Fid. & Guar. Co. v. Slaughter*, 836 S.W.2d 745, 749 (Tex. App.—El Paso 1992, no writ) ("Because there was sufficient independent evidence to support the judgment without considering the disputed statement, however, any error in its admission was harmless.").

In addition, although the parents argue that the admission of these statements violated their Sixth-Amendment confrontation-clause rights, the Sixth Amendment applies only to "criminal prosecutions," *see* U.S. Const. Amend. VI, and therefore does not apply to parental-rights-termination cases, which are civil proceedings.  *See In re S.A.G.*, 403 S.W.3d 907, 912 (Tex. App.—Texarkana 2013, pet. denied) (stating that there is no confrontation right in civil proceeding); *Alvarez v. Texas Dep't of Protective & Regulatory Servs.*, No. 03-02-00008-CV, 2002 WL 31599225, at *2 (Tex. App.—Austin Nov. 21, 2002, no pet.) (mem. op., not designated for publication) (explaining that Department's interview of child at school did not violate appellant's confrontation-clause rights because case was "a proceeding to terminate his parental rights; it [was] not a juvenile proceeding against his daughter with Fourth Amendment protections for her, nor [was] it a criminal proceeding against him"); *In re C.W.*, 65 S.W.3d 353, 354 (Tex. App.—Beaumont 2001, no pet.) ("[W]e note that the termination hearing in question was a civil proceeding.  As such, appellant had no constitutional right to confront witnesses.  The right to confront witnesses applies to criminal proceedings only."), *disapproved of on other grounds by In re Z.L.T.*, 124 S.W.3d 163 (Tex. 2003); *In Interest of R.V., Jr.*, 977 S.W.2d 777, 781 (Tex. App.—Fort Worth 1998, no pet.) ("A suit to terminate parental rights is a civil proceeding."); *Ochs v. Martinez*, 789 S.W.2d 949, 951 (Tex. App.—San Antonio 1990, writ denied) ("The [Sixth Amendment] applies by its own terms only to 'all criminal prosecutions' and therefore is inapplicable in civil cases.").

Accordingly, we overrule Father's and Mother's first issue.

9

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   October 23, 2015