# 1319-15

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
FOR THE STATE OF TEXAS
AUSTIN, TEXAS

JOHNNY RAY MULDROW         §
   (Appellant)             §
                          §
v.                         §
                          §        NO.    PD-1319-15
THE STATE OF TEXAS         §
   (Appellee)              §

ON PETITION FOR DISCRETIONARY REVIEW FROM THE DECISION OF
THE COURT OF APPEALS FOR THE SIXTH DISTRICT OF TEXAS
TEXARKANA, TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 13 2015

Abel Acosta, Clerk

IN CAUSE NO. 06-14-00103-CR
DISMISSIONG APPELLANT'S APPEAL
OF TRIAL CAUSE NO. 25549

HONORABLE ERIC CLIFFORD, JUDGE PRESIDING
FROM THE 6TH DISTRICT COURT
LAMAR COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

NOV 13 2015

Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW

JOHNNY RAY MULDROW
TDCJ# 1934318
Mark W. Stiles Unit
3060 FM 3514
Beaumont, TX  77705

Pro Se Representation

# TABLE OF CONTENTS

Table of Contents ................................................... i

Identity of Parties and Counsel .................................... ii

Index of Authorities ............................................... iii

Statement Regarding Oral Argument .................................. 1

Statement of Procedural History .................................... 1

Statement of the Case .............................................. 2


Summary of the Argument

The State failed to establish a sufficient Affirmative Link between
the contraband and Appellant, thus the legal and factual sufficiency
of the evidence was insufficient to sustain a conviction in this case.

Single Ground for Review [restated] ................................ 2

Standards of Review ................................................ 3

Argument ........................................................... 4

This Honorable Court Should Grant Review In This Case .............. 10

Conclusion and Prayer for Relief ................................... 11

Certificate of Service ............................................. 12

Appendix ........................................................... 13

A.  Memorandum Opinion of the Sixth District Court of Appeals, January 9, 2015,
    Johnny Ray Muldrow v. The State of Texas, Cause No. 06-14-00103-CR.

## IDENTITY OF PARTIES AND COUNSEL

A complete list of the names of all interested parties is provided below so that the members of this Honorable Court may determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**Presiding Judge at Trial:**
Honorable Eric Clifford, District Court Judge
6th Judicial District Court
Lamar County Courthouse
119 North Main Street
Paris, Texas   75460

**Attorneys for the State at Trial:**
Ms. Laurie Pollard, Esq., Assistant District Attorney
    - and -
Ms. Denise Hairston, Esq., Assistant District Attorney
District Attorney's Office
Lamar County Courthouse
119 North Main Street
Paris, Texas   75460

**Attorney for the State on Appeal:**
Gary D. Young, Esq., District Attorney
District Attorney's Office
Lamar County Courthouse
119 North Main Street
Paris, Texas   75460

**Attorney for Defendant at Trial:**
Ms. Jennifer Gibo, Esq.
109 1st Street Southwest
Paris, Texas   75460

**Attorney for Appellant on Appeal:**
Mr. Charles E. Perry, Esq.
1101 Main Street
Commerce, Texas   75429

**Appellant:**
Johnny Ray Muldrow
Pro Se Representation
TDCJ #1934318
Mark W. Stiles Unit
3060 FM 3514
Beaumont, Texas   77705

# INDEX OF AUTHORITIES

## CASES

AUTRY v STATE, 626 S.W.2d 758 (Tex.Crim.App. 1982) ........................ 8, 9

BERGER v UNITED STATES, 295 U.S. 78 (1935) .................................. 6

BRAZIER v STATE, 748 S.W.2d 505 (Tex.App. - Houston [1st Dist.] 1988) ...... 8

CLEWIS v STATE, 922 S.W.2d 126 (Tex.Crim.App. 1996) ......................... 3

DIXON v STATE, 541 S.W.2d 437 (Tex.Crim.App. 1976) .........................10

FORD v STATE, 571 S.W.2d 924 (Tex.Crim.App. 1978) ........................... 8

HUMASON v STATE, 728 S.W.2d 363 (Tex.Crim.App. 1987) ........................ 7

HURTADO v STATE, 881 S.W.2d 738 (Tex.App. - Houston [1st Dist.] 1994) ...... 7

JACKSON v VIRGINIA, 433 U.S. 307 (1979) ..................................... 3

MCGOLDRICK v STATE, 682 S.W.2d 573 (Tex.Crim.App. 1985) ..................... 7

NAPUE v ILLINOIS, 360 U.S. 264 (1959) ...................................... 6

PAYNE v STATE, 480 S.W.2d 732 (Tex.Crim.App. 1972) ......................... 6

PITONYAK v STATE, 253 S.W.3d 834 (Tex.App. - Austin 2008) .................. 3

POINDEXTER v STATE, 153 S.W.3d 402 (Tex.Crim.App. 2005) .................... 3

SULLIVAN v STATE, 564 S.W.2d 698 (Tex.Crim.App. 1978) ...................... 9

SWINK v STATE, 617 S.W.2d 203 (Tex.Crim.App. 1981) ......................... 9

U.S. v SMITH, 930 F.2d 1081 (5th Cir. 1991) ................................ 3

WATSON v STATE, 204 S.W.3d 404 (Tex.Crim.App. 2006) ........................ 3


## RULES AND CONSTITUTIONAL PROVISION

Texas Rules of Appellate Procedure

                  Rule 66.3(d) ........................................ 10

                  Rule 66.3(f) ........................................ 10

U.S. Constitution, Fourteenth Amendment ...................................... 6

## STATEMENT REGARDING ORAL ARGUMENT

In the event the within Petition for Discretionary Review is granted by this Honorable Court, Appellant requests oral argument, and submits that oral argument would assist this Honorable Court in resolving the questions involved herein, as the issues in this case, while highlighted by the particular facts of this case, are likely to recur.

## STATEMENT OF PROCEDURAL HISTORY

At trial in Cause No. 25549, a jury found Appellant, Johnny Ray Muldrow, guilty for the criminal offense of Possession of a Controlled Substance, namely, methamphetamine. Appellant pled "true" to two enhancement allegations, elected to have the trial court assess punishment, and was sentenced to fifty (50) years imprisonment in the Texas Department of Criminal Justice, Institutional Division.

Appellant appealed his conviction the the Sixth District Court of Appeals in Cause No. 06-14-00103-CR. The Sixth District Court of Appeals confirmed Appellant's conviction on January 9, 2015.

Appellant submitted an application for a Writ of Habeas Corpus pursuant to V.A.C.C.P. Article 11.07 requesting entitlement to file an Out-of-Time Petition for Discretionary Review. The Texas Court of Criminal Appeals ruled that Appellant's appellate counsel was ineffective for failing to notify Appellant of the Sixth District Court of Appeals' decision in his direct appeal and ruled that Appellant was entitled to file an Out-of-Time Petition for Discretionary Review in Cause No. WR-83,804-01 on September 23, 2015.

Appellant timely filed a motion with the Texas Court of Criminal Appeals requesting an extension of sixty (60) days to file his Petition for Discretionary Review and to have T.R.A.P. Rule 9.3(b) suspended. The Texas Court of Criminal Appeals granted this motion on October 8, 2015 extending the time to file his Petition for Discretionary Review until Monday, January 18, 2016, for Cause No. PD-1319-15.

## STATEMENT OF THE CASE

On the evening of August 10, 2013, Officer Keel, a Texas State Trooper, stopped a vehicle for exceeding the posted speed limit on the south loop around Paris, Texas. Driving the vehicle was Appellant and in the passenger seat was the owner of the vehicle, Ms. Cynthia Frisbee. Appellant had just recently took over driving the vehicle due to Ms. Frisbee complaining of having a headache and not being able to concentrate on driving as a result. Appellant was found to not have a driver's license, and was asked to step out of the vehicle.

Ms. Frisbee informed Ofc. Keel that the license plates on the vehicle were wrong, and that her son had stolen them and put them on the car for her. After confirming that the license plates were indeed wrong, Ofc. Keel had Ms. Frisbee get out of the car as well. As Ofc. Keel began to search the vehicle, Ms. Frisbee informed him that she had a bag of marijuana on the floorboard behind the driver's seat and that she had a pipe for smoking methamphetamine in a cubbyhole in the driver's side door. Ms. Frisbee then proceeded to show Ofc. Keel how to open the cubbyhole to retrieve the pipe.

When opening the rear hatch-back of the vehicle, Ms. Frisbee warned the officer that the blue suitcase, belonging to her, contained acid and that he needed to be carefule when handling it. Ms. Frisbee also informed Ofc. Keel that the blue suitcase was hers and the two black suitcases underneath the blue suitcases belonged to Appellant. The blue suitcase contained components for manufacturing methamphetamine as well as trace amounts of methamphetamine.

Appellant was indicted and was tried before a jury in cause 25549 for Possession of a Controlled Substance, namely, methamphetamine. He was found guilty by the jury. Appellant pled "true" to two enhancement allegations, elected to have the trial court assess punishment, and was sentenced to fifty (50) years imprisonment in the Texas Department of Criminal Justice, Institutional Division.

## SUMMARY OF THE ARGUMENT

### SINGLE GROUND FOR REVIEW [restated]

The State failed to establish a sufficient Affirmative Link between the contraband and Appellant, thus the legal and factual sufficiency of the evidence was insufficient to sustain a conviction in this case.

2

## STANDARDS OF REVIEW

To determine the **legal** sufficiency of the evidence in support of a conviction, the standard is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This is the minimum standard required to enforce the defendant's constitutional rights. The standard leaves it to the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. **JACKSON v VIRGINIA**, 433 U.S. 307, 318-19 (1979).

In a **factual** sufficiency review, the court views all the evidence in a neutral light and determines whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the verdict. **WATSON v STATE**, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypothesis. **CLEWIS v STATE**, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996. See also **PITONYAK v STATE**, 253 S.W.3d 834, 845 (Tex.App. - Austin 2008).

The **"Affirmative Links Rule"** is desighned to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. This rule simply restates the common-sense notion that a person - such as a father, son, spouse, roommate, or friend - may jointly possess a house but not necessarily jointly possess the contraband found in the house. (See **U.S. v SMITH**, 930 F.2d 1081, 1086-87 (5th Cir. 1991)). Thus, this Court has formulated the rule that "when the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." **POINDEXTER v STATE**, 153 S.W.3d 402 (Tex.Crim. App. 2005).

## ARGUMENT

In the instant case, Appellant, Mr. Muldrow, was convicted for the Possession of a Contraolled Substance, namely, methamphetamine (meth). The State's case against Appellant included testimony of the police officers involved with the arrest and investigation, video of the vehicle stop, the ensuing search of the vehicle and subsequent arrest of Appellant and his co-defendant and owner of the vehicle, Ms. Cynthia Frisbee, items and photos of items recovered from the search of the vehicle, and the testimony of Appellant's co-defendant, Cynthia Frisbee - the only civilian witness to testify against Appellant.

The search of the vehicle was predicated by the fact that the license plates on the vehicle were the wrong plates, and in fact had been stolen and installed on the car. The ensuing search of the vehicle produced contraband that consisted of a small bag containing marijuana and rolling papers, a pipe used for smoking methamphetamine, material used to manufacture (or cook) methamphetamine, including trace amounts of methamphetamine itself.

Mr. Muldrow was portrayed as a person who had for several months been assisting his co-defendant, Cynthia Frisbee, in purchasing psuedoephedrine (Sudafed) pills for use in the manufacturing of methamphetamine and assisting Ms. Frisbee in manufacturing the methamphetamine. Appellant allegedly made several trips back and forth between Texarkansa, Arkansas and Dallas, Texas with Ms. Frisbee in order to get homeless people to purchase the psuedo-ephedrine pills, paying them $10 or a small amount of meth, in addition to assisting Ms. Frisbee in manufacturing the methamphetamine in varios places, although recently, and the only location specified that Appellant was involved with manufacturing the meth, was in the basement of the house where Mr. Muldrow lived with his mother.

The issue here is that the portrayal of Mr. Muldrow was completely fabricated, and the only evidence supporting an Affirmative Link between the contraband found in the vehicle and Appellant was that he happened to be driving the car and the testimony given by his co-defendant, which was given in exchange for a lesser charge.

Ms. Frisbee was offered a plea agreement which resulted in one of her charges being dropped, the other charge being reduced from a 1st degree felony to a 2nd degree felony, and reduced prison time in exchange for testifying against Mr. Muldrow (RR Vol. 4, pgs. 214-15). This also included a debriefing with the police (RR Vol. 4, pg. 247) in which she was coached into what to say, as evidenced by such statements as "Is that what you want me to do, tell

4

stuff like that?" and "Tell me what you want to know." (RR Vol. 4, pg. 247).

Ms. Frisbee's fabricated testimony against Mr. Muldrow was also given out of pure spite to ensure he would go to prison because he refused to take the blame of the full charge so that she would not get in trouble. This is evidenced by a letter that Ms. Frisbee wrote to Mr. Muldrow in which she indicates that she has been in a similar situation before and specifically asks Mr. Muldrow to take the blame for her as stated:

> "Do you remember that boyfriend of mine... I sure wish I could get you to do what he did for me. I would see to it that you were taken care of the same as I did him for two and a half years. You know what I'm asking and I know what I'm asking, only one of us has to take that charge, all I can do is promise not to desert you."
> (RR Vol. 4, pg. 233)

Ms. Frisbee goes on to testify, "I was trying to get him to take the full charge and get me out of trouble." (RR Vol. 4, pg. 233).

There are a number of inconsistancies and lies throughout Ms. Frisbee's testimony. Had defense counsel conducted any investigation at all during her preparation for trial or interview any witnesses, Ms. Frisbee would easily have been impeached as a witness, and thus destroy the State's case against Mr. Muldrow.

One of the most notable lies Ms. Frisbee makes in her testimony concerns the location in which she and Mr. Muldrow allegedly "cooked the meth". being in the basement of the house that Appellant lived with his mother and aunt. They would cook the meth in the afternoon/evening, in the basement, while Appellant's mother and aunt were at work. (RR Vol. 4, pg. 175, 177-78, 213, 253).

The catch here is that Mr. Muldrow's mother lives in her own home, as does his aunt. His mother has been retired for nearly 10 years and is immobile due to her health and the loss of part of one of her legs, and her house DOES NOT have a basement. Mr. Muldrow's aunt's house also DOES NOT have a basement and his aunt lives in her own house and also has been retired for several years. Mr. Muldrow also does not live with either his mother or his aunt, but has his own house, which also DOES NOT have a basement.

Ms. Frisbee even states specifically that she had left her blue suitcase "in the basement" 2 days prior to leaving on the current trip back to Dallas. (RR Vol. 4, pg. 178). Had Ms. Frisbee truely had been in the house as she claims, she would not have been so mistaken about being in a basement.

An additional issue concerns Officer Keel's testimony as well, notably

5

regarding Appellant's knowledge of the chemicals in the blue suitcase due to the odor they emitted. Officer Keel responded to the State's question that anyone loading the blue suitcase would have been able to smell that bag.

Officer Keel testifies that when Trooper Sauls first pulls the blue suitcase out that he was able to smell "a real chemical smell. It's real pungent. It's just chemical." then confirmed that anyone who loaded the car "they would have been able to smell it." (RR Vol. 4, pg. 71).

The flaw here is that the vehicle was a hatch-back. Therefore, instead of the trunk area being a separate and enclosed area from the interior of the vehicle, the trunk area was PART OF THE INTERIOR OF THE CAR. Had there been any odor, especially from "about four feet away from it" as Officer Keel testified (RR Vol. 4, pg. 71), he would have smelled this "pungent" "chemical" smell when he first started searching the interior of the vehical; however, he did not. Ms. Frisbee even testified that the method she used to manufacture the meth produced no odors (RR Vol. 4, pg. 235). Officer Keel's testimony regarding these odors was fabricated in order to help establish an affirmative link between the contents of the blue suitcase and Mr. Muldrow.

The State knowingly using false testimony in order to gain a conviction is the same as knowingly presenting false evidence. This is a violation of Mr. Muldrow's 14th Amendment rights. "It is well established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the 14th Amendment." **NAPUE v ILLINOIS**, 360 U.S. 264 (1959).

Federal and State prosecutors are supposed to seek justice, not merely score convictions. The prosecutors in the instant case violated that duty. "A prosecutor's duty is to seek justice and to prosecute with 'ernestness and vigor', but must not use 'improper methods calculated to produce a wrongful conviction.'" **BERGER v UNITED STATES**, 295 U.S. 78, 88 (1935).

The facts in this case show that the State does NOT affirmatively link Mr. Muldrow to the contraband found in the vehicle. The only Affirmative Link between Appellant and the contraband was that he was driving the car and the fabricated testimonies of his co-defendant and Officer Keel.

This Honorable Court has recognized that, when a defendant is charged with unlawful possession of a controlled substance, the State must meet at least two evidentiary requirements: 1) The State must prove that the defendant exercised care, control, and management over the substance, and 2) That he knew what he possessed was contraband (citing **PAYNE v STATE**, 480 S.W.2d 732,

6

734 (Tex.Crim.App. 1972)). The State must provide proof that a defendant intentionally or knowingly exercised actual care, custody, control or management over a controlled substance consistant with the mens rea requirement of a possessory offense under the Controlled Substances Act. This Court has held that the State must provide evidence of "affirmative links" between a defendant and a controlled substance. **HUMASON v STATE**, 728 S.W.2d 363 (Tex.Crim.App. 1987). See also **MCGOLDRICK v STATE**, 682 S.W.2d 573 (Tex.Crim.App. 1985).

In **HURTADO v STATE**, 881 S.W.2d 738, 743 (Tex.App. - Houston [1st Dist.] 1994), the court listed an array of factors that tend to indicate a defendant's knowledge of and control over the contraband. These factors apply to Mr. Muldrow's case as follows:

1.  Was the contraband in plain view?

    - None of the contraband was in plain view. The small bag containing marijuana was behind the driver's seat on the floorboard, the pipe for smoking meth was located in an enclosed cubbyhole on the driver's door, and the remaining contraband was found in the enclosed blue suitcase, located in the trunk, which belonged to the co-defendant.

2.  Was the contraband conveniently accessible to the accused?

    - No.

3.  Was the contraband in a place owned by the accused?

    - No. The vehicle was owned by the co-defendant, Ms. Frisbee, as was the blue suitcase in which the methamphetamine and the material used for manufacturing the meth was located (RR Vol. 4, pg. 224). Ms. Frisbee also testified that the meth pipe found in the cubbyhole on the door was hers (RR Vol. 4, pg. 218) and that she had purchased the marijuana in Hot Springs, Arkansas and had thrown it in the back behind the driver's seat (RR Vol. 4, pg. 202).

4.  Was the contraband in a car driven by the accused?

    - Yes; however, Ms. Frisbee testified that Mr. Muldrow had just recently started driving the vehicle because she had a headache and no longer wanted to drive (RR Vol. 4, pg. 197, 218).

5.  Was the contraband found on the same side of the car as the accused?

    - Yes, but none of it was in plain view of Appellant nor was it easily accessible. These being the meth pipe located in an enclosed cubbyhole on the driver side door and the small bag of marijuana located on the floorboard behind the driver's seat.

6.  Was the contraband found in an enclosed space?

    - All contraband was found in an enclosed space, with the exception of the bag containing the marijuana, which, while not found in an enclosed space, was not in plain view and not accessible to the Appellant.

7. Was the paraphernalia to use the contraband in view of or found on the accused?

   - No paraphernalia or contraband was found on Mr. Muldrow's person or in either of his two black suitcases.

8. Did the conduct of the accused indicate a consciousness of guilt?

   - Ofc. Keel testified that Mr. Muldrow was talking very fast, fidgiting in his seat, and also grinding his teeth which Ofc. Keel attributed to actions of someone under the influence of methamphetamine (RR Vol. 4, pg. 46-47); however, this can also be attributed to the fact that Mr. Muldrow was scared because he was driving without a driver's license, as well as in part to his health condition - Thyroid cancer (in his neck).

9. Did the accused have a special relationship to the contraband?

   - No. No contraband was found on Mr. Muldrow's person or in his property. No tests were ever conducted to determine if he was under the influence of any narcotics nor were any fingerprints tested for on any of the contraband to establish if he had handled any of it.

10. Did the occupant of the vehicle give any conflicting statements about relevant matters?

    - No.

11. Were any affirmative statements made that connect the accused to the contraband?

    - No. On the contrary, Ms. Frisbee, the owner of the vehicle, testified that she was the one who informed Ofc. Keel that her son had stolen the license plates installed on the car and that Mr. Muldrow had nothing to do with that (RR Vol. 4, pg. 200). She informed the officer about the marijuana (RR Vol. 4, pg. 201), informed him about the meth pipe and showed him how to open the cubbyhole is was located in (RR Vol. 4, pg. 218), and states that the blue suitcase containing the other contraband, including the methamphetamine, belonged to her (RR Vol. 4, pg. 237-238).

Taking the evidence in the light most favorable to the verdict, Mr. Muldrow was driving a car, with the owner of the car sitting in the passenger seat, that contained components used to manufacture methamphetamine, contained drug paraphernalia and also marijuana - none of which was in plain view. The charges against Appellant would apply to anyone else had they been in the vehicle, even a child. "Proof of strong suspicion or mere probability is insufficient to support a conviction." **BRAZIER v STATE**, 748 S.W.2d 505, 507 (Tex.App. - Houston [1st Dist.] 1988). See also **AUTRY v STATE**, 626 S.W.2d 758 (Tex.Crim.App. 1982) and **FORD v STATE**, 571 S.W.2d 924 (Tex.Crim.App. 1978).

The record evidence in the instant case fails to "affirmatively link" Appellant to the contraband other than by evidence of his presence and proximity to the contraband. In this case, the evidence is simply circumstantial.

The rules of circumstantial evidence do not require that circumstances should to a moral certainty actually exclude every hypothesis that the act

8

may have been committed by another person, but that the hypothesis is a reasonable one consistent with the facts proved and the circumstances, and the supposition that the act may have been committed by another person must not be out of harmony with the evidence. **AUTRY v STATE**, 626 S.W.2d 758 (Tex. Crim.App. 1982). See also **SWINK v STATE**, 617 S.W.2d 203 (Tex.Crim.App. 1981) and **SULLIVAN v STATE**, 564 S.W.2d 698 (Tex.Crim.App. 1978).

The truth is that Mr. Muldrow had come to Dallas in order to seek free medical treatment for Thyroid cancer at Parkland Hospital (Dallas). While living in Dallas, he stayed at homeless shelters and worked for an advertising company distributing flyers, as well as working day-labor jobs. It was while staying at the homeless shelters that Mr. Muldrow met Cynthia Frisbee, who frequently visited the shelters in order to get homeless people to purchase psuedoephedrine (Sudafed) pills for her by paying them $10. Mr. Muldrow was one of these people whom she would pay to get the pills for her - easy money that he needed to survive on. Mr. Muldrow found out that Ms. Frisbee was from Texarkana and that she was going back there for a week. She agreed to give Mr. Muldrow a ride in order for him to visit his mother. Upon arriving, Ms. Frisbee dropped Mr. Muldrow off at his mother's home in Fulton, Arkansas and returned a week later in order to pick him up and return to Dallas. Upon returning to pick him up, Ms. Frisbee asked him to place her blue suitcase, already in the trunk, on top of his two suitcases telling him that she had fragile items in it and didn't want them to get broken. On the drive back to Dallas, Ms. Frisbee decided to drive through Paris, Texas in order to avoid driving on the freeway. It was after she had turned off of the freeway that she pulled over in a park and asked Mr. Muldrow to drive because she had a headache (RR Vol. 4, pg. 218). It was soon after this that the car was pulled over by a Texas State Trooper for speeding - going 67mph in a 60mph posted zone. Mr. Muldrow had no knowledge at all of any contraband being present in the vehicle.

Another item to note which is consistent with Mr. Muldrow only going to visit his mother for a week is the fact that the only items in his two suitcases were clothing. Ms. Frisbee also testified that Mr. Muldrow was working in Dallas passing out flyers (RR Vol. 4, pg. 249) and that this was "a round trip kind of thing" (RR Vol. 4, pg. 174). Also of note was that Ms. Frisbee also testified that they were relocating to Dallas on this trip (RR Vol. 4, pg. 249), and also states that they were only going to Dallas for only a few days and made hotel reservations (RR Vol. 4, pg. 192); however,

9

of the items found in Ms. Frisbee's vehicle, no clothing, hygiene items, or even the tent that Ms. Frisbee claimed she lived in up in Hot Springs, Arkansas in a friend's front yard (RR Vol. 4, pg. 216-217), were found to indicate that Ms. Frisbee was relocating to Dallas, planning to stay at a hotel, or even stay in Dallas for any extended period of time.

All of this confirms that Mr. Muldrow had simply caught a ride with Ms. Frisbee in order to visit his mother and was returning back to Dallas while Ms. Frisbee was simply making one of her frequent visits down to Dallas in order to purchase more pills.

While a trier of fact could conclude from the combination of Mr. Muldrow's proximity to the contraband - being the driver of the vehicle at the time it was stopped along with the fabricated testimonies of Ms. Frisbee and Officer Keel - that he knowingly exercised actual care, custody, control or management over the contraband found in the vehicle, it would be JUST AS RATIONAL for that same trier of fact to conclude that Mr. Muldrow was entirely unaware of the presence of any contraband.

Without some evidence excluding the equally reasonable hypothesis that Mr. Muldrow was unaware of the presence of the contraband, the trier of fact cannot conclude BEYOND A REASONABLE DOUBT that Mr. Muldrow knowingly possessed any of the contraban.

From the facts in the record, the evidence is not sufficient to sustain Appellant's conviction. **DIXON v STATE**, 541 S.W.2d 437 (Tex.Crim.App. 1976).

## THIS HONORABLE COURT SHOULD GRANT REVIEW IN THIS CASE

The Court of Appeal's decision abolishes any meaningful distinction regarding Affirmative Links, and opens the door for anyone who happens to be unknowingly in the proximity of contrband to be convicted of a crime for which they are innocent of.

This amounts to a judicial avoidance of legislated and/or constitutionally guaranteed rights.

The rights at stake herein go to the heart of the criminal justice system, and their violation should NOT be countenanced by this Honorable Court, not even to allow one conviction to stand. See Tex.R.App.Proc. Rules 66.3(d) and 66.3(f).

10

## CONCLUSION AND PRAYER FOR RELIEF

Due to circumstantial evidence and his unfortunate proximity to contraband and the frabricated testimonies of his co-defendant and Officer Keel, Appellant was deprived of important and meaningful rights as guaranteed by the United States Constitution as well as the Texas State Constitution.

There was harm done thereby because it was evident from the testimonies presented and the nature of said testimonies that it was intended to overcome the lack of any Affirmative Links on which the State would have been compelled so seek a conviction for the actually Indicted offense.

Respectfully, Appellant's conviction should be vacated and overturned, or his cause should be remanded for new trial, where he can adequately prepare to defend against all charges which may be brought against him.

Executed this 5th day of November, 2015.

Respectfully submitted,

Johnny Muldrow - Appellant
Pro Se Representation
TDCJ #1934318
Mark W. Stiles Unit
3060 FM 3514
Beaumont, TX   77705

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Petition for Discretionary Review, with Appendix, was delivered to the individuals listed below via the U.S. Postal Service, postage pre-paid, on November 5, 2015.

1) to the **Texas State Prosecuting Attorney**

   P.O. Box 13046, Capitol Station
   Austin, Texas 78711

and

2) to the **Lamar County Criminal District Attorney**

   Gary D. Young, Esq., District Attorney
   District Attorney's Office
   Lamar County Courthouse
   119 North Main Street
   Paris, Texas 75460

Respectfully submitted,

*Johnny Muldrew*

Johnny Muldrow - Appellant
Pro Se Representation
TDCJ #1934318
Mark W. Stiles Unit
3060 FM 3514
Beaumont, TX 77705

12

**APPENDIX A**



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00103-CR

---

JOHNNY RAY MULDROW, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 25549

---

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Justice Moseley

---

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

After a routine traffic stop led to the discovery of "a rolling meth lab," driver Johnny Ray Muldrow was convicted by a jury of possession of 200 grams or more but less than 400 grams of methamphetamine. After he had been convicted by a jury, Muldrow pled "true" to two enhancement allegations, elected to have the trial court assess punishment, and was sentenced to fifty years' imprisonment. On appeal, Muldrow argues (1) that the statutes under which he was convicted—Sections 481.115(e) and 481.002(49) of the Texas Health and Safety Code—are facially unconstitutional and (2) that the evidence is legally insufficient to support the jury's finding of guilt. We find that Muldrow failed to preserve his complaint that Sections 481.115(e) and 481.002(49) are void for vagueness and inadequately briefed the remaining grounds arguing that these sections are unconstitutional. We further find that the evidence was legally sufficient to support the jury's verdict. Consequently, we affirm the trial court's judgment.

## I.     The Constitutional Complaints are Either Unpreserved or Inadequately Briefed

Section 481.115(e) of the Texas Health and Safety Code makes possession of a Penalty Group 1 controlled substance a first degree felony "if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, 200 grams or more but less than 400 grams." TEX. HEALTH & SAFETY CODE ANN. § 481.115(e) (West 2010). Section 481.002(49) defines an "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (West Supp. 2014).

2

In a written objection filed with the trial court, Muldrow argued that both of these sections are facially unconstitutional. Specifically, Muldrow made the following argument:

> These statutes are facially unconstitutional because they violate the Equal Protection Clause by subjecting minor drug users, dealers, and manufacturers to the same punishment as major drug dealers and manufacturers. These statutes are not rationally related to the State's interest in punishing major drug dealers more severely than minor drug dealers, under a market-based approach, because they do not require the State to prove the chemical composition and weight of the actual illegal substance.
>
> Secondly, the statutes violate the Due Process Clause because they permit the State to secure a conviction for dirt, bong water, bathtub water, pool water, ocean water, or bleach that contains traces of methamphetamine under a heavier weight classification, which is subject to higher minimum sentence than the weight classification of the actual usable amount of controlled substance possessed. These statutes also violate[] the Eighth Amendment's prohibition of cruel and unusual punishment. Defendant should be charged only with the usable amount of methamphetamine that he is alleged to have possessed and not the unusable substance.

The trial court overruled Muldrow's constitutional challenges.

On appeal, Muldrow raises several grounds for his constitutional challenge to Sections 481.115(e) and 481.002(49). The first ground argues that these sections are void for vagueness. Specifically, he asks this Court to determine whether the terms "regardless" and "quantity," included within Section 481.002(49), render both challenged sections vague.

To preserve a complaint for our review, a party must first present to the trial court a timely objection stating the specific grounds for the desired ruling if not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1). The objection lodged before the trial court must comport with the ground asserted on appeal. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). Because Muldrow did not challenge Sections 481.115(e) and 481.002(49) on the ground that they were void for vagueness and because this

3

argument is not otherwise apparent from the context of the written objection, he has failed to preserve this issue for our review. *See Mays v. State*, 318 S.W.3d 368, 388 (Tex. Crim. App. 2010); *In re S.A.G.*, 403 S.W.3d 907, 913 (Tex. App.—Texarkana 2013, pet. denied) (finding issue unpreserved where, although appellant "voiced several objections on constitutional grounds below, the idea that [the challenged] statutes were void for vagueness was not among those objections").

Next, although Muldrow mentions on appeal that both the Equal Protection Clause and Due Process Clause challenges 78were raised below,[1] he recites the written objection, which we excerpted above, without any citation to relevant legal authority. "This Court has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record,'" as the appellant is required to do pursuant to the Texas Rules of Appellate Procedure. *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (quoting Tex. R. App. P. 38.1(i)). We have found no and are unaware of any authority supporting Muldrow's position. After carefully reviewing Muldrow's brief, we find this challenge inadequately briefed. Thus, we find that Muldrow has waived his remaining constitutional challenges to Sections 481.115(e) and 481.002(49). *See id.*; *McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992).

## II.    Legally Sufficient Evidence Support's the Jury's Finding of Guilt

In his second point of error, Muldrow argues that the evidence is legally insufficient to support the jury's finding of guilt. In evaluating legal sufficiency to determine whether any

---

[1] On appeal, Muldrow abandoned his Eighth Amendment argument to the challenged sections.

4

rational jury could have found possession of 200 grams or more but less than 400 grams of methamphetamine beyond a reasonable doubt, we will review all the evidence in the light most favorable to the jury's verdict. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J, concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Looking at the elements of the offense with which he was charged, it was the duty of the State to prove that (1) Muldrow (2) intentionally or knowingly (3) possessed methamphetamine (4) in an amount of 200 grams or more but less than 400 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(e). "To prove unlawful possession of a controlled substance, the State

5

must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2014). Here, Muldrow claims only that the State was unable to prove that the methamphetamine belonged to him.

Muldrow's troubles began with Timothy Keel, a Texas state trooper, who stopped the speeding vehicle that Muldrow was driving and discovered that he did not have a driver's license. In the course of questioning Muldrow, Keel determined that Muldrow was exhibiting possible signs of recent methamphetamine consumption. Keel, who was acquainted with Muldrow and his manner of speech, testified that Muldrow was speaking unusually fast, "kept twitching in his seat" and was "grinding at his teeth." Keel decided to question Muldrow's passenger, Cynthia Frisbee. Frisbee admitted to Keel that the vehicle belonged to her and that the license plates on the vehicle were stolen from another car. Keel arrested Muldrow for driving without a license and Frisbee for using fictitious plates.

After Muldrow and Frisbee were secured, Keel searched the vehicle. Inside the car, Keel found rolling papers, a glass pipe used to smoke methamphetamine and, behind the driver's seat, a clear plastic bag containing marihuana. Frisbee claimed these items as hers. According to Keel, Muldrow "said his stuff was in the back." Keel then popped the vehicle's hatchback and found it full of items including suitcases containing men's clothing and a large blue bag that emitted a pungent chemical smell, even from a distance of four feet away. Inside the blue bag, Keel found a methamphetamine pipe and a number of items commonly associated with the

manufacture of methamphetamine, including an unknown white powder, a grinder commonly used to grind pseudoephedrine pills, Drano, lye, glass bottles containing acid, nail polish, hydrogen peroxide, a bottle containing a gas treatment, powdered iodine, coffee filters, plastic tubing, a funnel, a strainer, gloves, measuring cup, an Igloo thermos, skillet, hotplate, glass pie plates, digital scales, plastic baggies, and several unused syringes. Keel described the blue bag as "a rolling meth lab." According to Brian Perry, an investigator with the Texas Department of Public Safety (TDPS), the items in the blue bag were components of a red phosphorus methamphetamine laboratory.

At trial, Frisbee explained that Muldrow was her business partner in a joint venture to manufacture methamphetamine. She spent every day with Muldrow and taught him how to prepare the drug. Together, they manufactured methamphetamine at Muldrow's residence. To obtain the required pseudoephedrine pills without being placed under suspicion of their illegal activities, Frisbee and Muldrow would travel to downtown Dallas and would enlist the homeless in purchasing the pills for them in exchange for money. It was during such a trip that Keel stopped Frisbee's vehicle.

Frisbee testified that the blue bag contained "everything that you need in order to make dope," that she had left the bag at Muldrow's home on the night before the trip, and that Muldrow was aware of the bag's contents. According to Frisbee, Muldrow loaded the blue bag into the car before they left for Dallas. Frisbee admitted that both she and Muldrow smoked methamphetamine during the drive and that they were both high when they were stopped by Keel. When Frisbee heard the patrol unit's lights and sirens, she decided to eat the only usable

7

methamphetamine found in the vehicle. She told Keel about the marihuana in hopes that he would be content with the find and would not continue searching the vehicle. Because she knew that Keel would run the vehicle's license plates, she admitted that the plates were stolen and hoped for leniency.

Claybion F. Cloud, III, a forensic chemist with the TDPS crime laboratory, tested some of the contents of the blue bag. Cloud determined that the blue bag contained the leftover byproducts of a methamphetamine cook that had already occurred. Frisbee testified that the Igloo container that was in the bag had held liquid byproduct and that there would have been up to a gram of methamphetamine that could have been extracted from this liquid. Cloud testified that the liquid, comprised of mostly water and some methamphetamine, weighed 1,290 grams. Cloud also tested a reaction vessel that contained 0.3 grams of methamphetamine residue, a mason jar holding 4.17 grams of liquid containing methamphetamine, and a plastic bag containing 84.81 grams of a crystalline form of dimethyl sulfate—a popular cutting agent for methamphetamine—that had "hardly any meth in there at all." In total, the amount of methamphetamine, together with adulterants and dilutants, exceeded a thousand grams.

Despite this evidence, Muldrow argues that there is no evidence that he, as opposed to Frisbee, possessed the methamphetamine. However, it is well established that an accused may jointly possess contraband with another and that possession need not be exclusive. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).

Possession may be established by proving either actual or constructive possession. *Id.* While mere presence at the location where drugs are found is insufficient, by itself, to establish

8

actual care, custody, or control of those drugs, presence or proximity to drugs when combined with other direct or circumstantial evidence may be sufficient if the proof amounts to more than a strong suspicion. *Evans*, 202 S.W.3d at 161–62. Unless the accused had exclusive possession of the place where the controlled substance was found, the State must present "additional independent facts and circumstances which affirmatively link the accused to the contraband" in order to prove possession beyond a reasonable doubt. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Poindexter*, 153 S.W.3d at 406.

As stated in *Bussey v. State*,

> A nonexclusive list of affirmative links that can be sufficient, either singly or in combination, to establish possession of contraband includes: (1) presence when a search is conducted, (2) whether the contraband was in plain view, (3) proximity to and the accessibility of the contraband, (4) being under the influence of narcotics when arrested, (5) possession of other contraband or narcotics when arrested, (6) making incriminating statements when arrested, (7) attempting to flee, (8) the making of furtive gestures, (9) the presence of an odor of contraband, (10) the presence of other contraband or drug paraphernalia, (11) the ownership of or the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) possession of a large amount of cash, (14) conduct indicating a consciousness of guilt, (15) the quantity of the contraband, and (16) the accused's presence in a suspicious area under suspicious circumstances.

*Bussey v. State*, No. 06-13-00152-CR, 2014 WL 1390475, *4 (Tex. App.—Texarkana Apr. 9, 2014, no pet.) (mem. op., not designated for publication) (citing *Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd);

9

*Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830).

The number of links is not dispositive; rather, we look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162; *see Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.) (holding that number of links is less important than degree to which links tend to connect defendant to controlled substance). Here, although the vehicle did not belong to him, Muldrow was one of two people present during the search of the enclosed space. Although the blue bag was not in plain view, Frisbee testified that Muldrow loaded the blue bag, and Keel testified that anyone who loaded the bag would have been able to smell the pungent chemical odor that it emitted. As the driver of the vehicle, Muldrow had the keys to open the hatchback to access the blue bag. Frisbee testified, and Keel suggested, that Muldrow was under the influence of methamphetamine during the traffic stop. A bag of marihuana was also found beneath the driver's seat. Thus, links 1, 3, 4, 5, 9, 10, and 12 were established by the evidence. Importantly, Frisbee's testimony that Muldrow was her partner in the venture to produce methamphetamine removed Muldrow from the category of an innocent bystander and demonstrated his joint and conscious possession of the blue bag's illegal contents. We find that the logical force of these links and the evidence, taken together, has a very strong tendency to connect Muldrow to the methamphetamine.

We find that there is ample evidence to support the jury's finding that Muldrow knowingly possessed methamphetamine in the amount alleged in the State's indictment.

10

Accordingly, we find the evidence legally sufficient to support Muldrow's conviction and overrule his last point of error.

## III.    Conclusion

We affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:      December 16, 2014
Date Decided:        January 9, 2015

Do Not Publish

11